THOMAS v. CINCINNATI. N. O. & T. P. RY. CO.

(Circuit Court, S. D. Ohio, W. D. December 23, 1896.)

RAILROAD RECEIVERS—ASSUMPTION OF LEASES—AGREEMENT OF PARTIES.

A railroad receiver, after paying some installments of rent for certain leased lots, refused thereafter to pay more than two-thirds of the rent reserved. This amount was refused, until, by agreement of the parties, an order of court was entered providing that the receipt thereof should be without prejudice to

the lessor's right to sue the railroad company for the remainder, to forfeit the lease and dispossess the company, to make the receiver a party to any action required to accomplish these ends, and also at any time to require him to elect either to assume the lease or surrender the premises. It was also provided that payments made under this order should not constitute the receiver an assignee of the lease, or make him liable under its covenants. *Held*, that the receiver's subsequent possession was traceable to the agreement evidenced by this order, and not to the lease, and that the only remedy of the lessor against him was to compel an election to become an assignee of the lease or to surrender the premises.

These were intervening petitions by Drausin Wulsin and Jeptha Garrard, in the receivership suit brought by Samuel Thomas against the Cincinnati, New Orleans & Texas Pacific Railway Company.

William Worthington and Drausin Wulsin, for petitioners.

Harmon, Colston, Goldsmith & Hoadley, for receiver.

TAFT, Circuit Judge. The intervening petitioners are owners, as trustees, of certain lots in the western part of the city of Cincinnati, included in leases made by them to the Cincinnati, New Orleans & Texas Pacific Railway Company. The rental fixed in the Wulsin lease is $1,797.25 a year. It contains a personal covenant by the lessee to pay the rent for 10 years from the 27th of March, A. D. 1886. There is a further provision that after the expiration of said 10 years there shall be no further liability on the personal covenant, but that the lessor shall look then only to the land for all rents, taxes, charges, and assessments. The lease of Garrard, trustee, is exactly like that from Wulsin, trustee, in terms, but covers different lots, and the rental was $750 a year. The two leases together cover lots 2, 3, 4, and 5 east of Horne street, and several lots west of Horne street. The company went into possession of the property and used a portion of the lots east of Horne street. Much of the land on both sides of Horne street is from 25 to 30 feet below the level of the surrounding streets, and is not available for use unless it is filled and graded. On part of the lots east of Horne street a fill has been made by the railroad company. On March 18, 1893, Samuel M. Felton was appointed as receiver of all the property, assets, rights, and franchises of the Cincinnati, New Orleans & Texas Pacific Railway Company, including all the leasehold interests, and all other property, real, personal, and mixed, held or possessed by it, to have and to hold same as the officer of, and under the orders and directions of, this court. He was directed to take immediate possession of all the property aforesaid, and continue the operation of the railroad in the same manner as the company had operated it. Felton accepted the appointment so made, was duly qualified, and entered into possession of the premises included in the above-described leases. He paid the installments of rent accruing under the leases due on April 1, 1893, and July 1, 1893, the rent being due in quarterly installments. No rent was thereafter paid until May 26, 1894, when the following entry was made:

"It appearing that the receiver of the Cincinnati, New Orleans & Texas Pacific Railway Company is in the use and possession of those certain tracts or parcels of land in Cincinnati, Ohio, bounded on the south by Hopkins street, on

the west by Horne street, on the north by Flint street, and on the east by Mc-Lean avenue, which lots are numbers 2, 3, 4, and 5, and has been in use of the same as such receiver in this cause since his appointment, and that compensation should be made to the owners of said lots for such use of the same by said receiver, as follows:

For lot No. 2.............................................................$ 500 00
For lot No. 3............................................................. 1,198 17
For lot No. 4............................................................. 518 50
For lot No. 5............................................................. 750 00

In all ..............................................................$2,966 67

—"The same to be in full of the amount to be paid by the receiver in this cause for the use and occupation of said lots for the period up to and including June 30th, 1894. It is therefore now ordered that said receiver be, and hereby is, authorized to make said payments accordingly."

Another entry was made of a similar character on January 23, 1895. Another entry was made February 26, 1895. The amounts ordered paid to Wulsin and Garrard under these orders were refused by them for fear that they might in some way prejudice their rights under the lease. Accordingly, the counsel for the lessors drew the following order, which was entered by the court:

"In the matter of the use and occupation of certain tracts or parcels of land in Cincinnati, Ohio, bounded on the south by Hopkins street, on the west by Horne street, on the north by Flint street, and on the east by McLean avenue, which lots are numbered 2, 3, 4, and 5, by the receiver of the Cincinnati, New Orleans & Texas Pacific Railway Company, it is further ordered that as to all sums heretofore ordered paid, and as to all sums which may hereafter be ordered paid, to the owners of said lots, as compensation for the use and occupation of said premises by the receiver in this cause, that while the payment of said sums shall be in full of the amount to be paid by the receiver for the use and occupation of said lots by him, yet that the receipt of said sum by the several owners of said lots, including the receipt of all sums that may hereafter be ordered paid herein, shall be without prejudice to the right of each and all of said owners to proceed at law or in equity, in any court, against the Cincinnati, New Orleans & Texas Pacific Railway Company, as a corporation, or assigns, or the stockholders of said corporation, to forfeit the leases made to the said the Cincinnati, New Orleans & Texas Pacific Railway Company for said premises, or to bring said leaseholds to sale, or to proceed by ejectment against said company or its assigns, or to enforce any other rights which said owners may have by virtue of said leases, and without prejudice to the claim of right of said owners to dispossess said receiver, or to make said receiver party to any action at law or in equity which may be brought against said the Cincinnati, New Orleans & Texas Pacific Railway Company, or its stockholders, or its assigns, in regard to said premises, and without prejudice to the rights of said owners to apply to this court, by way of intervening petition or otherwise, for an order requiring said receiver to pay any and all sums which may remain unpaid under the covenants of said leases, or to surrender possession of said premises; all payments made by said receiver under orders heretofore made, or which may hereafter be made, to be considered a credit on the rents reserved in the several leases made for said premises to said the Cincinnati, New Orleans & Texas Pacific Railway Company, but shall not constitute the said receiver assignee or sublessee of said leases, or make him liable otherwise on the covenants thereof."

The amounts ordered paid were thereupon received and receipted for by the lessors.

Another entry was made April 28, 1896, as follows:

"It is now ordered that the following amounts be paid by the receiver in this case: To L. H. Garrard, as compensation for use by the receiver in this case for a period from January 1, 1895, to April 1, 1896, of a portion of lot No. 2,

west of McLean avenue and west of Hopkins street, $625. To Drausin Wulsin, trustee, as compensation for use by the receiver in this case for a period from January 1, 1895, to April 1, 1896, of a portion of lot No. 3, west of McLean Ave. and north of Hopkins street in the city of Cincinnati, Ohio, $1,497.70."

The prayer of Wulsin's petition is as follows:

"Wherefore, said Drausin Wulsin, trustee as aforesaid, prays the court to order and direct said Samuel M. Felton, receiver as aforesaid, forthwith to pay to said Drausin Wulsin, trustee as aforesaid, said sum of $198.23, being the taxes due as aforesaid, with the penalty thereon, and also the balance due upon said rents, that is to say, rents which accrued from the 1st day of October, 1893, to the 1st day of October, 1896, both inclusive; being an installment of $449.31 upon each first day of October, January, April, and July within the dates aforesaid, with interest upon each of said installments until such payment is made, less a credit as of April 9th, 1895, of one thousand seven hundred and ninety-seven dollars and twenty-five cents ($1,797.25), and a credit as of May 20th, 1896, of one thousand four hundred and ninety-seven dollars and seventy cents ($1,497.70), or else that said receiver shall forthwith surrender possession of said premises so demised, and surrender said lease to said Drauslin Wulsin, trustee as aforesaid."

The prayer of the Garrard petition is the same.

These prayers are in the alternative, and counsel have made an application, since the argument, to amend the petitions so that the prayers shall be for an order that the receiver be compelled to pay the amount set forth in any event, whether the possession of the premises be surrendered or not. The leave to file this amendment is given, and the case will be treated as if both petitions were so amended. It is in evidence that the amount of money paid by the receiver was fixed by the receiver on the theory that the amount of property occupied by him—of the lots leased—did not exceed two-thirds of the tracts leased, either in extent or value. The receiver testified that the amount of land actually used by him is considerably less in rental value than two-thirds of the rental value fixed in the lease. It is also in evidence that the receiver has permitted persons to occupy, under revocable licenses, parts of these tracts for the temporary storage of heavy merchandise received in shipment over the road. At the oral hearing I expressed the opinion that the receiver was liable to pay the full rent under the lease since July, 1893, when he did pay an installment of the full rent. I should still be of that opinion were it not for the order made in this court, with the consent of the lessors, and formulated by their attorneys, the language of which I did not closely examine at the hearing. The time which has elapsed since the receiver took possession would be far in excess of the time required by him to determine whether he should elect to adopt the lease as a valuable asset of the company or to reject it. Without some agreement, tacit or expressed, between the parties, his possession of 3½ years could be attributed to nothing but the lease, and would therefore have to be construed as an election to assume it, for the benefit of his trust; but the order of April, 1895, was in effect an agreement between the receiver and the lessors that the receiver should pay two-thirds of the amount fixed as rent under the lease for the use and occupation of the land of which he was in actual possession. The lessors agreed to receive this amount, and to credit it upon the rent due under the lease from the railroad company,

stipulating that the receipt by them of this amount should be without prejudice to their rights to sue the railroad company for the remainder of the rent, to forfeit the lease, and to dispossess the company. It was also to be without prejudice to their right to sue the receiver in any action required to accomplish the foregoing purposes, and to their right at any time to require the receiver to elect between an assumption of the covenants of the lease or a complete surrender of the premises. That the sense of the order might be clear, it was expressly provided that the payment of the receiver theretofore or thereafter ordered for the use and occupation of the land should not constitute him an assignee of the lease, or a sublessee, or make him liable under the covenants of the lease. The order was, in fact, the result of an agreement that until an election was compelled the receiver might hold as a tenant at will, and not under the lease. Such an agreement of course dispenses with the necessity of considering the effect of the receiver's conduct as an implied assumption of the lease. His possession is not to be traced to the lease at all, but to this agreement, which was, in terms, both retrospective and prospective. It seems to me clear to a demonstration that the order limits the remedy of the lessors against the receiver to that of compelling an election to become assignee of the lease or to surrender the premises. The receiver, by his amended answer, states that, rather than pay the rental under the lease, he deems it in the interest of his trust to surrender the premises. An order will therefore be made against the receiver, requiring him to surrender the premises on or before the 1st of January, 1897, and to pay the rent due for use and occupation up to that time. This is all that the order of April 6, 1895, requires, and all that was prayed for in the petitions of the interveners before they were amended. If the counsel for the lessors wish to appeal, an appeal will be allowed.