GRAND TRUNK RY. v. CENTRAL VERMONT R. R.

(Circuit Court, D. Vermont. July 1, 1897.)

RAILROAD RECEIVERS—BANK LOAN—PLEDGE OF DEPOSITS.

The R. Railroad was leased to the C. R. R. Co.; the lease providing that the receipts from stations on the road should be deposited in a certain bank, and held as security for the rent accruing monthly; the C. R. R. Co. having the right to check out any sums in excess of the monthly rent. Subsequently the C. R. R. Co. obtained a loan of $20,000 from the bank, agreeing that the bank might hold any balance in its hands, above the rent, as collateral for such loan. Before the maturity of the loan, receivers of the C. R. R. Co. were appointed, there being at the time on deposit with the bank a sum, derived from station receipts, slightly less than the rent then due to the R. Co. The receivers subsequently deposited certain sums, received from stations of the R. Railroad and other sources, and the bank claimed to hold such sums to be applied on the loan. A sum sufficient to pay the rent was withdrawn by consent, without prejudice, and applied to the rent. Held, that the money on deposit at the time of the receivership was impressed with a trust for the payment of the rent to the R. Co., and was properly so applied by the receivers, but that, as the receivers took possession, not as the successors or assignees of the C. Co., but for the court, in the interest of all parties, the moneys coming to their hands could not be held by the bank under its agreement with the C. Co., though deposited by the receivers in the bank.

Benja. F. Fifield, for receivers.
Chas. A. Prouty, for Clement Nat. Bank.

WHEELER, District Judge. The Rutland Railroad connects with the Central Vermont at Burlington, and with the Fitchburg at Bellows Falls. It was leased to the Central, one clause of the lease being:

"Sec. 9. For the purpose of securing the payment of the rent and interest hereinbefore provided for, the party of the second part agrees to execute an irrevocable order, in favor of the party of the first part, upon the Fitchburg Railroad Company, and procure the acceptance of the same by that company, providing for the payment to the party of the first part by it of the sum of twenty thousand dollars monthly out of the traffic balances due from it to the said party of the second part, which shall be held by the party of the first part as a continuing security, and the said Fitchburg Railroad Company is hereby authorized and directed to pay to the said party of the first part the aforesaid sum of twenty thousand dollars monthly. The second party also agrees that the gross receipts from all the stations upon the line of the railroad hereby leased shall be paid directly into the Clement National Bank of Rutland, which is hereby authorized to hold the same as security to an amount equal to any sums due and unpaid under the provisions of this lease, whether of rent or of interest, and all sums to become due during the current month, deducting therefrom the amount of the aforesaid order, so long as the same is paid from month to month. If all sums due under this lease have been fully paid at the end of each month, any sums theretofore received and held as security by said bank shall be thereby released." "And if, at any time, the said Fitchburg Railroad Company neglects to pay the aforesaid order according to its terms, the party of the first part shall furnish some other suitable security in lieu thereof."

With reference to these clauses, the parties named in it, including the bank, further agreed in writing:

"Now, therefore, for the better understanding of the parties, it is agreed that the party of the second part shall be entitled to check out from said deposits all sums in excess of the difference between the amount of the Fitchburg R. R.

order referred to in said lease, so long as the same is regularly paid, and the balance due for the current month on the rent and interest from the party of the second part to the party of the first part; it being understood that, in case there is a balance due the party of the first part for any preceding month, the said bank shall be entitled to hold enough to cover said balance, and in case the Fitchburg order is not regularly paid, nor any equivalent security given, shall hold enough to cover the entire amount to fall due for the current month. Except as aforesaid, the party of the second part shall be entitled to check out all sums aforesaid. When the amount due for any month is paid, the Rutland Company shall notify the said bank, and thereupon any sums theretofore held as security shall be released."

The master reports that:

"While the bank was receiving the earnings of the Rutland Railroad as aforesaid, Wallace C. Clement, president, acting for the Clement National Bank, arranged with E. C. Smith, president of the Central Vermont Railroad Company, and acting for said railroad company, to loan the Central Vermont Railroad Company some $20,000; and, as an inducement to secure this loan, President Smith agreed that the Clement Bank might hold any balance in its hands of said deposits as collateral security, and the bank agreed to, and did subsequently, make the loan in reliance upon this agreement."

Receivers of the Central Vermont Railroad and of the Rutland, as a leased line, were appointed in this cause on March 20, 1896, and took immediate possession. At this time the bank held two notes of the Central Vermont Railroad Company, of $10,000, due one April 27, and the other May 27, 1896, made pursuant to this agreement. The rent then due amounted to $20,029.12. The bank was notified of the receivership on March 23d. The credit to the Central Vermont Railroad Company then stood at $20,013.73. The treasurer of the Central Vermont became the treasurer of the receivers, and continued to send receipts from the stations of the Rutland Railroad to the bank till April 7th; but the bank refused his checks, and he then stopped. The Fitchburg sent "about $14,000" ($14,017.52), as a final traffic balance, to the treasurer of the receivers, who deposited it in the bank. These deposits all amounted to $44,-890.85. The bank claimed $20,000 on account of the notes, and has by order of court, without prejudice either way, paid over to the receivers $24,958.65, and out of it the receivers have paid the rent accrued before the receivership, which amounted at the time of payment to $20,429.82. The question now is whether anything, and, if so, how much, more the bank should pay over to the receivers. The possession of the property was taken by the receivers, not as assignees of any party, nor as successors of any by operation of law, but for the court, to be disposed of according to existing liens and rights of parties. Railroad Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787; Railroad Co. v. Humphreys, 145 U. S. 105, 12 Sup. Ct. 795; Park v. Railroad Co., 57 Fed. 799. Although the Fitchburg Railroad Company was not a party to the lease or to the agreement, and might pay traffic balances to the Central Vermont as they should become due, and the receipts from stations would belong to the Central Vermont, as between the roads, without deposit, when the rents should be paid, still, when the proceeds from these sources had come into the bank under the lease and agreement, the deposit would become a pledge for the rent, and all interested had a vested right that it should be

so treated. The $20,013.73 on deposit when the receivers took possession had come from these sources, and was impressed with this trust, and the right to it in this condition the receivers took. As there was not any more than, nor quite, enough to pay the rent accrued, the bank had no right to it, nor to any part of it, under the agreement for securing the loan to the Central Vermont; for that agreement, by its terms, only covered the excess above the rent. After the receivers took possession, the proceeds from these sources belonged to them, and they could deposit them wherever directed by the court, or they should see fit without direction; and the deposit would belong to the general funds of the receivership, subject only to particular liens, if any, and not to the Central Vermont, or to any other party, as such. The bank had no such lien, or claim of any, but by virtue of the agreement with the Central Vermont as to any excess there might be above the rent; and, as there was no excess, it had no lien whatever upon that sum. It could have none upon anything but then future deposits made by the receivers, or the legal consequences of such. The Central Vermont Company could not, on common principles, pledge these then future earnings by mere agreement, without possession. The covenants for rent, even, and all mere executory agreements of the insolvent corporation, were but obligations to be reckoned in distribution of assets only. Sency v. Railway Co., 150 U. S. 310, 14 Sup. Ct. 94. The agreement as to excess could only operate upon what the Vermont Central could deposit, and become effective only upon what that company should deposit, which was only the $20,013.73 on deposit, not amounting to any excess above rent when the receivership excluded that company. The bank attempts to hold the amount of this deposit against the receivers because the Central Vermont made it, or caused it to be made, and the Central Vermont owed the notes, on the principle that the ultimate balance of a debt due from an insolvent is the proper subject of a dividend from the estate. Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148. But here the bank did not owe the Central Vermont anything to which that company was entitled at the time of the commencement of the receivership, or to which it could ever become entitled but by payment of the rent, which it has never paid. The rent has been paid by the receivers, and, if they had been mere successors or assigns of the Central Vermont, their payment might relieve this deposit for the benefit of the bank; but they represent other rights, also, and have made payment from funds in their hands as receivers in which others have interests. As the receivers took the $24,958.65 of the whole deposit, and out of this sum paid the rent under order of court, expressly without prejudice, this receipt and payment may as rightfully now be taken to have been made from one part of the deposit as from another, and to have included the $20,013.73 expressly held for payment of rent, and an application of it upon the rent where it belonged, as well as to have included any of the deposits made by the receivers themselves. And if the receipt and payment should be considered as of and from the deposits made by the receivers, as they paid the rent for which the prior deposits were pledged, they

would be entitled to the pledge. The claim of the bank to hold any of these deposits for the payment of its own debt cannot be maintained without holding that the agreement of the Central Vermont that the bank might hold the excess of deposits over the rent for its security so operated as an assignment or pledge of the future receipts from stations and the Fitchburg balances to the bank as to give the bank a right to them after the right of the Central Vermont had been superseded, and before they had been deposited or earned. But this agreement could not operate upon these sources of income any further than the Central Vermont could so carry it out as to create an excess for the security of the bank's debt, which that company did not and could not do to any extent at all. The receivers created and deposited for themselves, in other rights, what the bank claims to hold as such excess; and, without regard to any form the deposits have been given, they have a right to the results of those they have made. Report of master accepted and confirmed, and balance of deposit thereupon decreed to receivers.