### JOHNSON et al. v. LEHIGH VALLEY TRACTION CO.

(Circuit Court, E. D. Pennsylvania. June 14, 1904.)

#### No. 16.

1. RAILROADS—FORFEITURE OF LEASE—EFFECT OF APPOINTMENT OF RECEIVERS FOR LESSEE.

Receivers appointed for a lessee of railroad property have a reasonable time after their appointment in which to determine whether or not they will assume the lease, and where, in such case, formal action was not taken by the lessor company until after their appointment to declare a forfeiture because of a default in the payment of rent which matured prior to the receivership, and within a few days after the expiration of the time for making such payment as fixed in the lessor's notice it was made by the

receivers, and received and retained by the lessor, the court of which the receivers are officers will not enforce the forfeiture on petition of the lessor.

2. LANDLORD AND TENANT—FORFEITURE OF LEASE—EQUITY JURISDICTION.
Where a tenant is in possession, equity has no jurisdiction to enforce a forfeiture of a lease, the lessor having an adequate remedy by ejectment.

3. SAME—RIGHT TO ENFORCE FORFEITURE.
Forfeitures not being favored by courts, either of law or equity, the requirements of a lease must be strictly followed by the lessor before a forfeiture will be enforced against the lessee.

4. SAME—RAILROAD LEASE.
A lease of railroad property provided that in part payment of the rental the lessee should pay semiannual dividends directly to the stockholders of the lessor company, which was required to declare such dividends in advance of each payment, and to furnish the lessee with a list of the stockholders. This requirement had not been observed, the payments having been made to the lessor company which distributed the same. Default was made in one of such payments and correspondence ensued in which the lessee endeavored to obtain further time, and certain stockholders stated their desire not to be insistent, and at this time receivers were appointed for the lessee. A resolution was then passed by the lessor's stockholders declaring a forfeiture of the lease, and notice was given the lessee and receivers as provided by the lease requiring the payment to be made within 30 days, otherwise the lease to stand annulled. Eleven days after the expiration of such time the payment was made by the receivers, and distributed among the lessor's stockholders, who retained the same. The receivers had also made other payments of interest which applied on the rental. *Held,* that the court would not enforce a forfeiture, and require its receivers to surrender the property, for the reason, among others, that no dividend had been declared and list furnished, which was a substantial condition precedent to forfeiture imposed by the lease that had not been waived by the lessee.

In Equity. On petition against receivers to enforce forfeiture of lease.

Robert H. Hinckley and W. S. Kirkpatrick, for petitioners.
J. W. Bayard and J. G. Johnson, for respondent.

J. B. McPHERSON, District Judge. This was an application made by Clarence A. Wolle and other stockholders of the Bethlehem & Nazareth Passenger Railway Company, whose road had been leased by the Lehigh Valley Traction Company, asking the court to make an order requiring the receivers of the traction company "to show cause why they should not be held to have defaulted in the lease with the Bethlehem & Nazareth Passenger Railway Company in not paying the dividends of two and one-half per cent. on the capital stock of $150,000 of the said the Bethlehem & Nazareth Passenger Railway Company, and why the lease of said Bethlehem & Nazareth Passenger Railway Company to the said Lehigh Valley Traction Company, dated January 26, 1900, should not be forfeited, and the said Bethlehem & Nazareth Passenger Railway Company be at liberty to enter upon the demised premises as of its first and former estate, according to terms of said lease as set out in section L thereof." Nothing is said in this proposed order about default on the part of the traction company in any other respect, although other

¶ 3. See Landlord and Tenant, vol. 32, Cent. Dig. § 337.

defaults are averred in the petition, and the principal controversy has been waged about the default in the payment of the dividend due in February, 1903. Certainly, if this ground of forfeiture is untenable, no other can be maintained, and it is upon this point, therefore, that stress has been laid by the counsel for the petitioners.

At the argument leave was asked to amend the petition so as to show that the proceeding was being conducted on behalf of the Bethlehem & Nazareth Passenger Railway Company as a corporation, and was not merely a proceeding by certain individual stockholders in their own interest. To this request no objection is made by the receivers, and accordingly the application to amend is granted, so as to substitute the Bethlehem & Nazareth Railway Company, wherever necessary, in the place of the individual stockholders who are named as the petitioners.

Turning to the principal question in dispute under the exceptions, I need only say that I do not find it necessary to discuss again the legal propositions that were presented to the master, and have been once more presented to the court with force and ability. They have been satisfactorily dealt with by the learned master, and, as I agree with the conclusions to which he has come, I adopt his report as the opinion of the court:

I find the following facts, to wit:

1. That the Bethlehem & Nazareth Passenger Railway Co. is a corporation of Pennsylvania duly incorporated under the act of Assembly entitled "An act to provide for the incorporation and government of street railway companies in this commonwealth," approved May 14, 1889 (P. L. 211), and its supplements, by letters patent dated February 6, 1899.

2. That company, January 26, 1900, being the owner of a line of railway, property, and franchises operated from Bethlehem to Nazareth, Pennsylvania, and hereinafter called the "lessor," demised the same to the Lehigh Valley Traction Co., hereinafter called the "lessee," owning and operating similar lines connected therewith, for nine hundred and ninety-nine years, to be used, controlled, and operated as part of its system, the demised property being fully described in said lease.

3. The demised property was bound by a mortgage held by the State Trust Company of New York, to secure the payment of principal and interest at 5 per cent. per annum on one hundred and fifty bonds of $1,000 each, payable semiannually on the 1st days of May and November in each year.

4. This lease provides, inter alia, as follows:

(1) "Thirteenth.—The 'Lessor' covenants that at all annual, or adjourned or other meetings or elections of the 'Lessor' during the continuance of this lease, for the selection of Directors it will procure the necessary proxies and will cast the necessary votes to elect as Directors of the said 'Lessor' Company at least four persons who shall be the nominees of the 'Lessee'; to the end that the 'Lessee' may at all times have proper representation in the Board of Directors; it also covenants that by legitimate means it will procure at each annual election during the continuance of this lease, the selection of such persons to fill the office of President, Secretary and Treasurer respectively of the 'Lessor' as the 'Lessee' may designate and name; it being understood that the 'Lessee' is to be responsible for the conduct of the said officers and Directors so named by it, and is to and does hereby agree to protect and indemnify the said 'Lessor' against any loss, damage, injury or liability whatever, by reason of anything that the officers and the Directors nominated and suggested by it may do, or perform in their official capacity."

(2) "D.—The 'Lessee' agrees to pay from time to time during the term hereby created all United States, State, County, Municipal and Township taxes, and all public charges of any kind which may be legally imposed or levied

upon the property hereby demised, or on the traffic or business of the same, as well as all taxes assessed and imposed upon the aforesaid bonded indebtedness of One Hundred and Fifty Thousand Dollars ($150,000), as also all taxes imposed by the State of Pennsylvania upon or against the said corporation, upon its capital stock of One Hundred and Fifty Thousand Dollars ($150,000)."

(3) "G.—As rentals or compensation for the use of the property hereby demised and leased, the 'Lessee' covenants to pay to the 'Lessor' the following further rental, to wit:—to pay the interest on the bonded indebtedness of the 'Lessor,' namely the interest on the said mortgage bonds aggregating One Hundred and Fifty Thousand Dollars ($150,000), hereinbefore described, or any bonds issued in refunding or renewal thereof.

"Said payments of interest are to be made by the 'Lessee' paying to the holders thereof as they respectively mature, all the interest coupons attached to the said bonds or to any bonds issued to take up, redeem, or refund the present issue, which said payments to the holders of the said coupons shall be considered as a payment on account of this rental; the coupons so redeemed and paid shall be full satisfaction and discharge of so much of the rental herein covenanted to be paid as is represented thereby."

(4) "H.—The 'Lessee' covenants to pay the 'Lessor' as further or additional rental, a sum equal to a dividend of five per cent. (5%) per annum on the aforesaid capital stock of One Hundred and Fifty Thousand Dollars ($150,000); said payments shall be made in equal semi-annual installments of two and one-half per cent. (2½%), payable respectively on the first Monday of August and February in each and every year during the continuance of this lease. Said dividends are to be paid as hereinbefore provided, without any deduction or abatement by reason of any taxes assessed upon said shares of stock by the State of Pennsylvania or by reason of any other taxes assessed against the said 'Lessor' by National, State or Municipal authority."

"The said payments may be made directly to the persons holding the shares of stock of the 'Lessor' as shown by the books of the said 'Lessor,' and by lists of stockholders to be furnished to the 'Lessee' by the 'Lessor' at least ten days before the date of the maturity of each of said dividends, and the receipts of the said stockholders for each semi-annual dividend shall be a full, sufficient and legal acquittance and discharge of the amount of rent paid by such dividend."

(5) "I. — The 'Lessor' covenants that from time to time, at least ten days before the time for the payment of the said semi-annual dividends, it will procure proper resolutions to be passed by its Board of Directors, declaring, authorizing and directing said dividends to be paid."

(6) "L. — If the 'Lessee' its successors or assigns shall make default in the payment of the rents herein reserved, or in the performance of any of the covenants herein contained on its behalf, and such default shall continue for a period of thirty (30) days after the time for payment or performance as fixed in this Indenture has arrived, it shall and may be lawful for the 'Lessor' to declare this lease forfeited and at an end, and if within thirty days after notice of such intended forfeiture the 'Lessee' does not make the payments, or perform the covenants as to which it has so defaulted, then this lease shall be ended and determined, and the 'Lessor' shall be at liberty to enter upon the demised premises as of its first and former estate, and to put out and remove the 'Lessee' from the same, but such re-entry shall not be a bar to the recovery of any rent in arrears, or to any action for damages for the breach of any of the covenants of this lease."

5. The lessor thereupon and since has procured the necessary proxies and caused to be cast the necessary votes to elect as its directors four nominees of the lessee out of the nine directors of the lessor, and procured the selection of such persons as president, secretary, and treasurer of the lessor as the lessee has designated; Messrs. Wright, Harris, Hartzell, and Bates being the lessee's four nominees elected as directors, and Hartzell as president and Bates as secretary and treasurer, nominees of the lessee, at the last election held January 12, 1903.

6. Previous to said lease, the meetings of the lessor's directors and stockholders were held at Bethlehem, the place of its principal office, where also

were held its annual meetings of stockholders and directors January 12, 1902, and January 12, 1903. There was no evidence of any other meetings of its directors during that time except one held July 30, 1902.

7. Mr. Bates, who since January, 1903, has been secretary and treasurer of both companies, as his predecessors had been, has had the physical possession of the lessor's stockbook and ledger, but the physical possession of its minute books has remained since the lease with Mr. Keys, its secretary, who then resigned. The executive officers of both companies since the lease have occupied the same office in Allentown. The calls for the lessor's meetings of directors and stockholders have been issued by its officers.

8. Since the lease there has been no declaration of dividends by the lessor, or list of its stockholders furnished to the lessee, the payment of dividends under the lease having been made by the lessee to the lessor.

9. The causes of action, the subject of the present contentions under the petition, are:

I. Delay in the payment of the dividends, each amounting to $3,750, declarable and payable February 2 and August 3, 1903, under the lease.

II. Delay in payment of the tax on the lessor's capital stock for 1901, amounting to $750.

I. As to the delay in payment of the said dividends:

January 28, 1903, Mr. Keys, having been in the habit, as a reminder, of calling Mr. Bates' attention to the fact that dividend time was approaching, and that it was necessary to hold the proper meeting for the declaration of a dividend, but not then being an officer of the lessor, wrote to Mr. Bates the following letter:

"The Bethlehem Electric Light Co.,
                Bethlehem, Pa.

                                        Bethlehem, Pa., Jan. 28, 1903.
Mr. C. M. Bates, Sec'y. & Treas.,
                Lehigh Valley Traction Co.,
                        Allentown, Pa.
Dear Sir:—

Kindly take notice that the semi-annual dividend on the capital stock of the Bethlehem and Nazareth Passenger Railway Company is due and payable first Monday of February next; also, that the quarterly dividend of 1¾% on $140,000 capital stock of the Bethlehem Electric Light Company is due and payable February 1st.

Do you wish resolutions of the Board of Directors of the Company declaring the same to be recorded as passed; also, do you wish notice advertised in the papers?                          Yours very truly,
                                                    R. B. Keys."

To which letter no reply was made.

The first Monday of February, 1903, was the date for the payments of the dividends on the lessor's stock under the lease upon the lessor's compliance with its provisions. Within ten days before February 28, 1903, Messrs. Wolle and Thomas, two of the lessor's directors and stockholders, called upon Mr. Wright, president of the lessee, asking for payment of the dividend and the prospect of its payment, to which Mr. Wright replied that they had been considerably embarrassed, but would be able to pay it within a short time. February 28, 1903, Mr. Wright wrote to Mr. Wolle the following letter:

                "Lehigh Valley Traction Company,
                        Allentown, Pa.
                Commonwealth Bldg., Allentown, February 28, 1903.
Mr. C. A. Wolle,
        Bethlehem & Nazareth Street Railway Co.,
                Bethlehem, Pa.
Dear Sir:—

In the matter of the settlement of the rental of $3,750 due the Bethlehem and Nazareth Company on February 1st, we shall have to ask the indulgence of you and your associates.

I handed you the other day a statement of the gross receipts of the last year of the roads we leased from you and your friends and you will readily

understand from those figures that the contract has not been a profitable one to us. While this, of course, in no way legally or morally relieves us from the obligations of our contract yet it does constitute some reason why you should feel inclined to help us.

The disasters last year by flood and storm affected us to such an extent that there was no increase in the gross receipts of our road over the year before, while the coal strike and the accidents referred to very largely increased the operating expenses. The situation in both directions is improving. We close our February business with 25% greater receipts than any February since the existence of the road, and the coal situation as you know is improving.

In settlement of your rental I send you a note of this Company at three months for $3,825.00 representing interest from February 1st to the maturity of the note on June 1st. We give you this note with the understanding that it shall not interfere in any way with your rights and remedies under the lease in the event the note should not be paid at maturity.

Yours truly,

R. E. Wright, President."

To this letter Mr. Wolle replied March 6, 1903, in the following letter:

"Bethlehem, Pa., March 6th, 1903.

Robert E. Wright, Esq.,
Pres't. L. V. Traction Co.,
Allentown, Pa.

Dear Sir:—

I beg to acknowledge receipt of your favor of 28th inst., enclosing note dated March 2nd, 1903, at three months for $3,825.00 as stated, which I received on my return from New York this morning. Of course it will be necessary before taking any action on this to call together those interested which we propose to do at a very early date, and I will then advise you.

Yours very truly,

Clarence A. Wolle."

An informal meeting of holders of a large majority of the stock, but not a regular or duly called stockholders' meeting, was held at Bethlehem, which meeting authorized Messrs. Wolle and Thomas to confer as a committee with Mr. Wright, return the note which had been sent in his letter, and demand a cash settlement, which Messrs. Wolle and Thomas did March 10, 1903, Mr. Wright stating at the interview that they required time, and asked for leniency, to which Messrs. Wolle and Thomas replied that they were not disposed to be harsh.

May 4, 1903, Messrs. Wright, Bates, and Norris were appointed receivers of the lessee by this court.

June 30, 1903, at an informal meeting of the lessor's stockholders, or some of them, held at Bethlehem, a formal request was prepared and sent to its president to call a stockholders' meeting; and July 10, 1903, the lessor's stockholders, at a special meeting duly called, passed the following resolution:

"Whereas, under Indenture made the 26th day of January, 1900, between this Company and the Lehigh Valley Traction Company a lease was duly executed, wherein the Lehigh Valley Traction Company, lessee, agreed among other things to pay as rental or compensation for the use of the property of this Company, certain amounts representing 5% of the bonds of the Company, and a dividend of 5% on the Capital Stock thereof:

And Whereas under the same Indenture, it was provided that if the Lessee shall make default in the payment of the said rental and such default continue for a period of thirty days after time for such payment, it is the right of this Company to declare said lease forfeited and at an end, and if within thirty days after notice of such intended forfeiture the Lessee does not make the payments, or perform the covenants as to which it has so defaulted, then this lease shall be ended and determined.

And Whereas, the payment of the semi-annual dividend of 2½% on the Capital stock due and payable the 1st Monday of February, 1903, was passed and default made therein and still remains unpaid.

Therefore Resolved, that this Company so notify the Lessee that this de-fault was made and still exists, and that unless payment be made within 30 days from this date, the lease shall be and is hereby declared forfeited and at an end and this Company will enter in and take possession of its property again and make claim for such defaulted payments and such other damages as may have been sustained by reason of such lease and forfeiture."

And on July 13, 1903, a notice was served upon Mr. Wright, president of the lessee, and the receivers, to the officers and receivers of the lessee, reciting that resolution, and concluding as follows:

"Now, therefore, you are hereby notified that the said Bethlehem and Nazareth Passenger Railway Company, through its stockholders, has this day by resolution declared said lease forfeited and at an end, and that the said Bethlehem and Nazareth Passenger Railway Company will enter in and take possession of its property again, with the same effect as if the said lease in the foregoing preamble and resolution recited, had never been entered into and made, and will make claim for such defaulted payments and such other damages as it may have sustained by reason of such lease and forfeiture, unless payment be made within thirty days from the service of this notice, of all defaulted rentals and interest, and other damages that may have been sustained by the said Bethlehem and Nazareth Passenger Railway by reason of said default.

July 10, 1903.

                                        Chairman of Meeting of Stockholders.
[Seal.]
B. & N. P. R. Co.
    Inc. Feb. 6, 1899.                  Secretary of Meeting of Stockholders."

—Which notice was signed by the chairman and secretary pro tem. of that meeting.

August 17, 1903, without further action of the lessor's directors or stockholders as a body, the following notice was served upon the lessee and re·ceivers:

"Bethlehem and Nazareth Passenger Railway Company.
                                        Bethlehem, Pa., August 17, 1903.
Robert E. Wright, Esq., Pres't,
C. M. Bates, Sec'y. & Treas.,
    Lehigh Valley Traction Co.
                    and
Robert E. Wright, Esq.,
C. M. Bates,
G. C. Norris,
    Receivers of the Lehigh
            Valley Traction Co.
Gentlemen:—

In view of the fact that default has been made by you in the payment of rentals, taxes, &c. under the provisions of the lease between the Bethlehem and Nazareth Passenger Railway Company and the Lehigh Valley Traction Company, and the proper steps having been taken by this Company to declare the said lease forfeited, the proper notice having been served upon you to that effect, as required by the terms of said lease, the time under such notice having expired on the 13th inst., and said forfeiture having become absolute, we hereby demand a surrender and return to the custody of this Company of the said leased railway property and all the aforesaid and otherwise scheduled properties belonging thereto.

It is our desire that such surrender shall be immediate and amicable and without the formality of court proceedings, and in order to avoid the same we request the prompt payment by you of all unpaid dividends due the Bethlehem and Nazareth Passenger Railway Company, and of the accrued rentals due this company from the last paid dividend and interest periods the payment of unpaid taxes of every kind due for the years 1901 and 1902 and accrued for 1903 on this road, the replacement upon the lines of the road of this company of all cars and equipments in good first class condition, the putting into proper condition the roadbed and power house and other property of the company and such other things as are required by the lease between

this company and the Lehigh Valley Traction Company, and we will thereupon take steps to cancel and abrogate the aforesaid lease.

Respectfully,

Clarence A. Wolle,

Chairman of the Meeting of Stockholders of the Bethlehem & Nazareth Railway Co.",

This request was not acceded to.

September 8, 1903, the present petition was filed, and the said order of reference thereon to the master made.

September 17, 1903, Mr. Wright, as president of the lessee, and for the receivers, wrote the following letter to the lessor:

"Receivers of the
Lehigh Valley Traction Company,
Allentown, Pa.
Commonwealth Bldg., Allentown, September 17, 1903.

To the
Bethlehem and Nazareth Street Railway Co.,
Bethlehem, Pa.

Gentlemen:—

We beg to call your attention to the fact that the Lehigh Valley Traction Company, Lessee of your Company has not yet received the list of stockholders of your Company entitled to share in the August dividend, nor have we been advised that your Company has procured the enactment of the proper Resolutions of your Board of Directors, declaring, authorizing and directing the payment of the August dividend. I beg to refer to clause "H" and "I" of the lease between these Companies. As soon as we receive this list of stockholders and as soon as your Company passes the Resolution declaring the dividend and authorizing its payment the same will be paid.

Yours truly,          R. E. Wright,

President Lehigh Valley Traction Co. also acting for the Receivers."

Which letter was not replied to.

October 6, 1903, Mr. Keys sent the following letter and inclosed copy of a resolution to Mr. Bates, secretary and treasurer of the lessor:

"Bethlehem, Pa., Oct. 6, 1903.

Mr. C. M. Bates, Sec'y. & Treas.,
Bethlehem & Nazareth Passenger Railway Co.,
Allentown, Pa.

Dear Sir:—

Pursuant to direction of the Board of Directors of the Bethlehem & Nazareth Passenger Railway Company held this day, I send you herewith a minute of the proceedings of the Board and invite your special attention to that portion thereof covered in the resolution directing you not to receive, if offered, from the Lehigh Valley Traction Company any sum purporting to be dividend due the Bethlehem & Nazareth Passenger Railway Company as of the 1st Monday of August last.

Will you kindly acknowledge receipt of this and so oblige,

Yours very truly,

R. B. Keys, Sec'y P. T."

"Bethlehem, Pa., Oct. 6th, 1903.
10.30 A. M.

As per adjournment, the Meeting of the Board of Directors of the Bethlehem & Nazareth Passenger Railway Company was held this date.

Present:— Truman M. Dodson                Jos. K. McKee
          James Thomas                     Clarence A. Wolle
          Geo. H. Wolle

In the absence of the President and Secretary, the Chairman and Secretary P. T. of the meeting of the 3rd inst. were called upon to act.

Mr. James Thomas moved and Mr. Jos. J. McKee seconded the following preamble and resolution:—

Whereas R. E. Wright, President of the Lehigh Valley Traction Company and one of the Receivers of the same wrote a letter to the Bethlehem &

Nazareth Passenger Railway Co., calling attention to the fact that the list of stockholders had not been forwarded nor action taken by the Board of Directors declaring semi-annual dividends due and payable 1st Monday in August last, and

Whereas because of default having been made by the Lehigh Valley Traction Co. in the performance of the covenants enjoined by the lease of the Bethlehem & Nazareth Passenger Railway Co. to the Lehigh Valley Traction Co. and such default having been duly certified to the Lehigh Valley Traction Co. and notice served of forfeiture of the said lease in consequence,

Therefore resolved that the Secretary and Treasurer of this company be and he is hereby notified not to receive such dividend, if offered, from the Lehigh Valley Traction Company.

—Which was unanimously adopted.

Mr. Thomas moved that the Secretary of this meeting be directed to forward a copy of the proceeding to C. M. Bates, Secretary and Treasurer.

Attest:— R. B. Keys,
Secretary P. T."

The following payments have been made by the lessee, the previous dividends and interest having been paid:

April 30, 1903, it paid the interest on the $150,000 of mortgage bonds then maturing, amounting to $3,750, and the receivers October 31, 1903, paid the same for the same interest maturing November 1, 1903, to the Morton Trust Company, trustee under the mortgage.

August 24, 1903, the receivers paid to the lessor $3,750 (the principal amount of the semiannual dividend under the lease declarable and payable the first Monday of February, 1903), by then giving to Mr. Bates, the lessor's treasurer, and taking his receipt as such therefor (he being then also secretary and treasurer of the lessee and one of the receivers), the receivers' check therefor on their deposit in the Allentown Bank, where they had sufficient funds to meet it, to his order as the lessee's treasurer, and which he indorsed as such to the Second National Bank, and there deposited it to the credit of the lessor in a special account for the payment of dividends which the lessor kept, and which was opened before Mr. Bates became treasurer, and wherein such previous deposits had been made. The Second National Bank indorsed that check to the order of any national or state bank, indorsements guarantied, and it was stamped "Paid."

August 27, 1903, Mr. Bates caused checks of that date of the lessor's to be drawn, and which he signed as the lessor's treasurer, to the aggregate amount of $3,750, in favor of its stockholders, and sent those checks out to them, respectively, in payment of the February, 1903, dividend; a list of which checks, giving their number, date, amount, and number of shares held by each stockholder, is found at page 114 of the evidence, and which checks were paid by the Second National Bank, and returned paid to Mr. Bates. Neither the lessor nor any of its stockholders returned said payments of $3,750 to the lessee, but some of the stockholders deposited their amounts in a trust account, the evidence not disclosing any terms of the trust.

September 29, 1903, the receivers paid to the lessor $3,750 (the principal amount of the semiannual dividend declarable and payable the first Monday of August, 1903) by then giving to Mr. Bates, the lessor's treasurer, and taking his receipt as such therefor, the receivers' check therefor on the Allentown Bank, where the receivers then had moneys on deposit to meet the said check. Mr. Bates, after receipt of this check, being notified by Mr. Keys of the action of a meeting of the lessor's directors October 6, 1903, as aforesaid, has since therefore kept the said check in his possession without further use of it.

II. As to the delay in payment of the tax on the lessor's capital stock for 1901:

The lessee, considering the tax assessed by the state department upon the lessor's capital stock for 1901, which was settled by the department July 18, 1902, against the several companies composing its system, as entirely too high, contending that it should be assessed not at par, but at 50 per cent. thereof, instead of filing an appeal from the said assessment, presented an application for a rehearing—a not unusual practice—and two hearings thereof were

held as to the several companies, including the lessor, before the board, composed of the State Treasurer, Auditor General, and Secretary of the Commonwealth. No disposition has been made of these hearings. The tax returns were made out for the year 1902, and sworn to, but have been held, by the advice of counsel, pending the action of the department upon the pending application respecting the taxes for 1901. However, in September, 1903, Mr. Wright indorsed the tax bill for 1901 "O. K. Pay after September 18th, 1903, R. E. W.," that being the date of the next monthly meeting of the receivers, and he wishing the payment to be made during the month then beginning. This bill, thus indorsed, he gave to the receivers' treasurer, and a check upon the Allentown Bank therefor, dated November 5, 1903, to the order of the State Treasurer, was drawn and signed by two of the receivers, and was awaiting the signature of the other receiver, when the evidence in the present case touching the same was taken. The receivers then had money on deposit in said bank to their credit to meet the said check, which has since been paid.

There are no other taxes due by the lessee, which are unpaid, to support the forfeiture claim.

Receivers of a corporation, especially one engaged in public service as a common carrier, in such cases as the present, are appointed, pending proceedings for sale and administration of its assets incidental to an injunction restraining the company and its officers from affecting its assets meanwhile, to preserve the performance of the public service and its assets for the equitable benefit of all parties interested, suspending the right of separate creditors by independent separate proceedings to obtain a preference or advantage over others, and a consequent sacrifice and disintegration of its property; to preserve the status quo of all parties in interest, creditors and stockholders, in their relation to the assets.

"A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his cutody, as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession, in the property." Chicago Bank v. Kansas Bank, 136 U. S. 236, 10 Sup. Ct. 1017, 34 L. Ed. 341, and cases cited.

Receivers are allowed a reasonable time to determine and elect whether they will assume any of the corporation's executory contracts, such as the lease in question, meanwhile exercising the company's rights under it for the purpose of such determination, involving questions of the respective interests of creditors, secured and unsecured, and stockholders, whether the contract can be operated at a profit, or, even if at a loss, temporary or otherwise, whether, upon the whole, for the ultimate benefit of any of the persons interested, and requiring practical tests of its operation. Sunflower Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235, 35 L. Ed. 1025; Quincy Co. v. Humphreys, 145 U. S. 82–87, 12 Sup. Ct. 787, 36 L. Ed. 632; U. S. Trust Co. v. Wabash Co., 150 U. S. 287–299, 14 Sup. Ct. 86, 37 L. Ed. 1085; Central Trust Co. v. Wabash Co. (C. C.) 46 Fed. 26–32; Park v. N. Y. & C. Co. (C. C.) 57 Fed. 799; N. Y., P. & O. Co. v N. Y., L. E. & W. Co. (C. C.) 58 Fed. 268; Farmers' Co. v. N. P. R. R. Co. (C. C.) 58 Fed. 257; Ames v. Union Pacific Co. (C. C.) 60 Fed. 966; Clyde v. Richmond Co. (C. C.) 63 Fed. 21; Mercantile Trust Co. v. St. Louis, etc., Co. (C. C.) 71 Fed. 601; Carswell v. Farmers' Loan Co., 74 Fed. 88, 20 C. C. A. 282; Ames v. Union Pacific Co. (C. C.) 74 Fed. 335; Empire Co. v. McNulta, 77 Fed. 700, 23 C. C. A. 415; Thomas v. Cincinnati Co. (C. C.) 77 Fed. 667; Central R. R. Co. v. Farmers' Co. (C. C.) 79 Fed. 158; Grand Trunk Ry. Co. v. Central Vt. R. Co. (C. C.) 81 Fed. 541; Platt v. P. & R. R. Co., 84 Fed. 535, 28 C. C. A. 488; Id. (C. C.) 115 Fed. 842.

During the reasonable time reserved to the receivers to determine their election, and, a fortiori, if they elect to accept the lease, they are obliged to perform its obligations on the part of the lessee maturing after their appointment; and, as to those obligations matured before their appointment, their acceptance of the lease is subject to its conditions, requiring their performance to the extent which the lessor would have the right to cancel and forfeit for nonperformance thereof as a practical consequence of its provisions.

to that effect. Parks v. N. Y. & L. E. R. Co. (C. C.) 57 Fed. 801; Farmers' L. & T. Co. v. N. P. R. Co. (C. C.) 58 Fed. 257; N. Y., etc., R. Co. v. N. Y., L. E., etc.. Co. (C C.) 58 Fed. 268.

Of course, it was open to the lessor, when advised that such reasonable time for the receivers' action has passed, to apply to the court to direct them to elect whether they would assume the lease, or if advised that the receivers had by any act elected to accept it, to proceed against the receivers for payment of any due rentals.

Neither of these courses were pursued, and the receivers have practically elected to assume the lease. Neither the lessor nor the petitioners, if they could do so, have proceeded by re-entry for breach of said conditions for rental payments, authorizing forfeiture, which re-entry at common law requires a previous demand for the rent due on the exact day, with circumstances of great particularity (2 McAdam on Landlord & Tenant, § 188; note 3 to Bowman v. Foote, 1 Am. Law Reg. (N. S.) 362; Henderson v. Carbondale Co., 140 U. S. 33, 11 Sup. Ct. 691, 35 L. Ed. 332), and does not defeat the lessee's title in equity, which is only barred by an ejectment (Jackson v. Elsworth, 20 Johns. N. Y. 190); and which re-entry is essential to complete forfeiture where the lessor is out of possession, such a forfeiture being only at the lessor's option (Scheaffer v. Scheaffer, 37 Pa. 525; Wills v. Manufacturers' N. G. Co., 130 Pa. 222–231, 18 Atl. 721, 5 L. R. A. 603; Ray v. Gas Co., 138 Pa. 577, 578, 20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922; English v. Yates, 205 Pa. 108, 54 Atl. 503). Nor have they proceeded by an action at law in ejectment against the receivers under the act of March 3, 1887, c. 373, § 3, 24 Stat. 554 [U. S. Comp. St. 1901, p. 582], enrollment whereof was corrected by the act of August 13, 1888, c. 866, 25 Stat. 436 [U. S. Comp. St. 1901, p. 582], permitting suits against receivers without previous leave of the court appointing them, but providing that such suit shall be subject to the general equity jurisdiction of that court, so far as may be necessary to the ends of justice, or by leave of that court, which would be subject to the same equities.

But the present petition is made by Messrs. Wolle, Thomas, and Keck and Keys, and not by the lessor, although the briefs submitted spoke of it as the petition of that company, Messrs. Wolle and Thomas being two of its nine directors, and of its stockholders, and Messrs. Keck and Keys stockholders only, except that Mr. Keys has acted as secretary pro tem. at some of its meetings; but the petitioners are not otherwise related to the company.

Pursuant to the lease, Mr. Hartzell, its president, and Mr. Bates, its secretary and treasurer, were nominees of the lessee, and Mr. Bates is one of the receivers; but these considerations will not dispense with formal direct action of the corporation lessor to enforce the forfeiture, and the petitioners are the actors in the present proceedings.

Where a tenant is in possession equity has no jurisdiction to enforce a forfeiture, the landlord having adequate remedy in ejectment. Hoch v. Bass, 133 Pa. 328, 19 Atl. 360.

The claim of forfeiture is for delay in payment of the lessor's stockholders' dividends declarable first Monday of February, 1903, and the state taxes upon its capital stock for the year 1901, settled by the department July 18, 1902, since when a rehearing was pending until paid by the receivers.

As to the said dividends declarable February, 1903, the receivers are also entitled to a dismissal of the present petition (1) if the lessor has neglected or disregarded any restriction, limitation, or condition to its right of forfeiture, (2) or waived that right, (3) or if the receivers have any equity to be relieved against it.

(1) Courts of law as well as equity do not favor forfeiture, and requirements for them must be strictly pursued. Gtn. P. R. Co. v. Fitler, 60 Pa. 130, 100 Am. Dec. 546; Henderson v. Carbondale Co., 140 U. S. 33, 11 Sup. Ct. 691, 35 L. Ed. 332.

The requirement of the lease that the lessor must declare dividends upon the stock at the dividend period mentioned in the lease, to give the lessee the option to pay the shareholders directly, instead of the lessor, was not only a technical requirement necessary to be observed to support a forfeiture, but a very substantial one, inasmuch as the lessee could thereby avoid an imminent forfeiture for nonpayment of rental without a full payment by negotiating

with such stockholders as would be willing to give further time for payment of their respective dividends. The payment of the dividends at any dividend periods directly to the lessor without its declaration of the dividend would be no waiver of that requirement at any other dividend period when the then emergencies might prompt the lessee to require and claim the benefit of that option as thus essential to its then interests.

(2) If the rent in the lessor's dividend declarable February, 1903, was then mature without such declaration, when the receivers were appointed May 4, 1903, there had been no formal demand of its payment by the lessor, and the interviews and correspondence between Messrs. Wolle and Thomas, individual directors and stockholders, and the lessee's president, Mr. Wright, had finally resulted in his request for leniency and delay in payment on the grounds suggested, and their reply that they were not disposed to be harsh. Where the conduct of the landlord has been such as to lead the tenant to suppose that the rights of forfeiture given by the lease would not be strictly pursued, forfeiture will not be enforced without a notice that in future it will be insisted upon. Hughes v. Metropolitan R. Co., 1 L. R. C. P. Div. 120; Cogley v. Browne, 15 Phila. 162; Wanamaker v. McCaully, 11 W. N. C. 450; Steiner v. Marks, 172 Pa. 400, 404, 33 Atl. 695.

The first notice from the lessor to the lessee was July 13, 1903, reciting a resolution of the lessor's stockholders, and stating that the lessor had declared the lease forfeited, and that the lessor would re-enter and claim all defaulted payments and other damages unless payment thereof be made in 30 days, and a notice was given to the receivers on August 17, 1903, from Mr. Wolle, as chairman of the stockholders' meeting, that the forfeiture had become absolute, and demanding immediate surrender of the demised premises, and prompt payment of all accrued rentals, and performance of all things required by the lease, and that "we will thereupon take steps to cancel and abrogate the aforesaid lease." August 24, 1903—a delay of 11 days from the 30 days of said notice—the receivers paid the lessor's treasurer those dividends, and August 27, 1903, he paid them to its respective stockholders, who then accepted them.

Rent carries interest from the time it is due, unless from the conduct of the landlord it may be inferred that he means not to insist upon it, or there are other equitable circumstances making the charge of interest improper. Obermyer v. Nichols, 6 Bin. 159, 6 Am. Dec. 439.

Technically, the rent was not payable until the dividends had been declared and the stockholders had accepted their dividends for 1903 without interest. Its nonpayment under the circumstances would not support a forfeiture. The letter of Mr. Keys of January 28, 1903, to Mr. Bates, reminding him that the semiannual dividend was declarable February, 1903, and his making no reply thereto, was no waiver of the requirement for the declaration of the dividend, so far as it was a requirement necessary for forfeiture. The general rule is that subsequent acceptance of rent accrued before forfeiture will not waive it, while of that accrued after the cause of forfeiture will. As to an acceptance of rent whose nonpayment is claimed as the ground of forfeiture, in Bacon v. Western, etc., Co., 53 Ind. 229, it was said that, to insist upon a forfeiture of a lease for nonpayment of rent which the landlord has received seemed a legal solecism; and in Becker v. Werner, 98 Pa. 555, there being other breaches of covenant, Judge Paxson said that rendered it unnecessary to discuss the question how far the forfeiture could have been sustained under the circumstances had the nonpayment of the rent been the only breach of covenant by the lessee, which rent had been paid out of a sale under the landlord's warrant. However, these circumstances rather suggest an equitable ground of relief against forfeiture.

(3) Of course, equity will not relieve against forfeiture merely as an act of mercy simply to save property from forfeiture, and although in Pennsylvania, under leases providing for forfeiture for nonpayment of rent, with the usual ejectment clause providing for judgment in ejectment and issue of a habere facias possessionem, the court will not relieve against a forfeiture for simple nonpayment of rent, yet the rule in equity is to give a tenant equitable relief against forfeiture for breach of a covenant to pay rent, as it is a mere money demand, a matter of computation, and interest upon it can be calculated with

certainty, and the landlord therefore compensated for his inconvenience sustained by the rent being withheld. 2 Taylor on Landlord & Tenant, §§ 495, 496, pages 80 to 82; 2 McAdam on Landlord & Tenant, § 197; Woodfall on Landlord & Tenant (17th Ed.) §§ 365–376. Besides, to sustain a forfeiture for delay in payment of the said rent in the February, 1903, dividends, which have been received by the stockholders, would work the inequity of permitting them to hold as a payment by the receivers the full amount of an unsecured obligation maturing before the receivership, if mature without declaration of dividend, as against other creditors of an insolvent corporation.

In Newman v. Rutter, 8 Watts, 55, Judge Rodgers held that, where there was a dispute as to whom and in what proportions rent under a lease was payable, it would be harsh application of the principle as to forfeiture to decide that a tenant's defense to settle that question should work a forfeiture of the estate; and in Gtn. P. Ry. Co. v. Fitler, 60 Pa. 124, 132, 100 Am. Dec. 546, Judge Sharswood held that, where an insolvent corporation had forfeited the stock of a shareholder, as that extinguished all his liabilities for assessments, the creditors had an equity to prevent and set aside the forfeiture.

The dividends declarable the first Monday of August, 1903, were not then declared, and September 17th Mr. Wright, for the receivers and lessee, notified the lessor that the dividend had not been declared or the list of stockholders furnished, upon which being done they would pay that rental, which notice was not replied to; and finally, without further awaiting for said action, the receivers, September 29, 1903, paid the lessor's treasurer the amount of said dividends, which the lessor's directors October 6, 1903, directed him not to receive, and he has since held. If no right of forfeiture exists as to the February dividend, of course none exists for the August dividend.

As to the delay in the payment of state taxes upon the lessor's capital stock for 1901, no time was fixed in the lease for that payment, and those taxes were not settled until July 28, 1902, since when a rehearing was pending until they were finally paid by the receivers. The delay in this payment under these circumstances would not support a right to forfeiture.

Upon the whole case I am of opinion, and therefore recommend, that the petition should be dismissed, and the following decree entered thereon:

### Decree.

And now, to wit, June 14, 1904, the petition of Clarence A. Wolle et al., for a rule upon the receivers of the Lehigh Valley Traction Company and that company to show cause why they should not surrender to the Bethlehem & Nazareth Passenger Railway Company its railway and property demised to the Lehigh Valley Traction Company under the forfeiture clause of their lease, and the master's report thereon being heard, it is decreed that the said petition be dismissed.

The foregoing decree may be entered.