HENDERSON *v.* CARBONDALE COAL AND COKE COMPANY.

HITCHCOCK *v.* CARBONDALE COAL AND COKE COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Nos. 247, 248. Argued March 24, 25, 1891. — Decided April 20, 1891.

The rule in *Gibson* v. *Shufeldt*, 122 U. S. 27, that " in equity as in admiralty, when several persons join in one suit to assert several and distinct interests, and those interests alone are in dispute, the amount of the interest of each is the limit of the appellate jurisdiction," affirmed and applied.

Equity leans against lessors seeking to enforce a forfeiture of the lease, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto.

Leased property in Illinois being in the hands of a receiver, and there being no evidence that he lived at St. Louis, proof of the mailing of a registered letter to him at that place, claiming a forfeiture of the lease for non-payment of rent, and of an endorsement on the receipt of the receiver's name " per C. M. Pierce " is not such proof of the personal ser-

Statement of the Case.

vice of demand and notice as authorizes a decree of forfeiture under the statutes of Illinois.

The presumption that a letter mailed in the ordinary way reaches its destination, is a presumption of fact, not of law, and does not arise unless it also appears that the person to whom it is addressed resides in the city or the town to which it is addressed.

No foundation is laid for a decree of forfeiture of a lease for non-payment of rent, if it appears that the lease described in the notice of claim of forfeiture is a different lease from the lease produced and proved in the judicial proceedings to obtain such a decree.

Under the statute of Illinois full, clear and strict proof of delivery to the proper party of a demand for payment of rent in arrear, and notice of claim of forfeiture of a lease in case of failure to do so, is necessary, in order to entitle the lessor to a decree of forfeiture.

A court of equity has full power over its orders and decrees during the term at which they are entered; and may grant a rehearing of a cause at the term at which it was heard and decided.

When a party who is ordered to appear in a pending suit in equity, voluntarily appears, without service of process, and answers, setting up his claims, it is too late for him to object that there was error in the order.

THE case, as stated by the court, was as follows:

On the 1st day of February, 1878, there was existing under the laws of the State of Illinois a corporation known as the Carbondale Coal and Coke Company. It then executed a mortgage on its properties to secure the sum of fifty thousand dollars. On the 1st day of January, 1881, it consolidated with the St. Louis Coal and Coke Company, under which consolidation the new company assumed the liabilities of the constitutent companies, but retained the name of the Carbondale Coal and Coke Company. Prior to the consolidation, the St. Louis Coal and Coke Company had also executed a mortgage to secure the sum of seventy-five thousand dollars. The business of the corporation was that of mining coal in the counties of Williamson and Jackson, Illinois. For this business it bought some lands and leased others. Its mortgages covered both the property owned and the property leased. In October, 1884, a suit was commenced in the Circuit Court of the United States for the Southern District of Illinois by certain stockholders and creditors, making the company and the trustees in the two mortgages defendants, and John W. Harrison was on the same day appointed receiver. Subsequently

Harrison resigned his trust, and Howard A. Blossom was by order of the court named as his successor. Among the leases which the Carbondale Coal and Coke Company had were the following : One executed March 28, 1871, by G. T. Johnson and wife, of one hundred and twenty acres; one April 5, 1873, by Nancy Priddy, widow of Peters Priddy, and guardian of the minor heirs of Peters Priddy, to wit, Belinda, Rodey, Henry, Martha and Susan Priddy, of eighty acres; one March 25, 1871, by Thomas Waldron and wife, of forty acres; one March 18, 1871, by Mary Waldron and Catharine Waldron, widow of Henry Waldron, and guardian of the minor heirs of Henry Waldron, to wit, Jacob, David, Martha, Henry and Catharine Waldron, of one hundred and five acres; and one March 18, 1871, by Tinsley Priddy and wife, of one hundred and forty acres. The consideration of these leases was one dollar per acre each year until such time as the lessee should commence mining, and then a royalty of five cents per ton for all coal mined. None of the leases were of the surface ground, but simply of so much thereof as should be necessary for the mining of coal thereunder, the sale and mining of coal being the substantial matter of transfer. These leases also contained this stipulation in respect to forfeiture: "And it is furthermore agreed that if at any time said party of the second part, its successors or assigns, shall be in default and fail to pay any sum due for rent or royalty as aforesaid, for the term of ten days after written demand therefor, by the party legally entitled to demand and receive the same, the party of the second part, its successors and assigns, shall forfeit all right to mine in, or otherwise hold or enjoy, the tract or sur- veyed sub-division of land for and on account of which said unpaid sum shall have become due; and, after such default and demand as aforesaid, the party legally entitled to the life estate or fee simple ownership of said land may at once, or at any time thereafter, enter into the exclusive possession thereof, the mines and all the appurtenances thereto belonging, and hold the same free and discharged of every and all claims of the party of the second part, its successors, assigns, or other legal representatives."

Under these leases, prior to the appointment of the receiver, the lessee had paid to these various lessors many thousand dollars, and yet had never mined a ton of coal, or disturbed the surface of the soil; so that this money had been paid by the lessee without receiving any present equivalent, and solely in anticipation of future profit from the mining of coal therein. The time of payment of these rentals had been a matter of convenience between the lessors and lessee. The former had purchased goods at the store of the latter, and at the end of the respective years a settlement of accounts had generally been made. No stress had been laid by either party upon the exact date, the first of January, at which the rents were due. The rents due on the first of January after the appointment of the receiver, to wit, January 1, 1885, were not paid, and as to some of the leases there was still other rent due. More than six months thereafter, and on the 17th day of July, 1885, an intervening petition was filed on behalf of all these lessors or their successors in interest. The purpose of this petition was not the collection of rent, but the forfeiture of the leases. Before the final decree in the Circuit Court, Johnson settled with the receiver and dropped out of the litigation, leaving it to proceed in respect to the four other leases, the amount of land included therein being three hundred and sixty-five acres. For this land, as heretofore stated, annually for more than a dozen years one dollar an acre had been paid by the lessee to the lessors, without the slightest return to the lessee — no occupation of the surface of the land — no mining of any coal. These lands were patented by the United States to the original patentees between 1850 and 1860. The purchase price of government lands was then one dollar and a quarter per acre. As a matter of general history, it is well known that land warrants with which government lands could be located were on the market at prices ranging from fifty cents to a dollar an acre. So that we start into this investigation with the fact that these lands were bought from the government, title in fee simple being acquired, not to exceed twenty years before these leases, at not more than one dollar and a quarter per acre; and that for more than a dozen years before the appointment of

a receiver and the commencement of this litigation, the owners of these lands had received each year a dollar an acre rental, without ever surrendering the possession of the surface, or losing a pound of coal beneath. In other words, that amount paid was clear gain and with no loss.

It also appears that the mortgages were executed and the bonds of the Coal and Coke Company negotiated on the security of these leases, as well as of the fee simple property; so that while the lessors were receiving rent other parties were loaning money to the lessee on the strength of its title to the properties. Further, while in the order appointing the receiver the Coal and Coke Company was directed to assign and transfer over to the receiver all its property, including these leases, it does not appear that any actual assignment or transfer was made by the Coal Company; and the receiver apparently took possession only by virtue of the order of appointment. No notice of non-payment, no claim of forfeiture, was given to the trustees in the mortgages; none to the company mortgagor. The sole basis of forfeiture is in alleged notices to the receiver, after the non-payment of the rent due on January 1, 1885. No application was made to the court for an order on the receiver for the payment of the rent, or, in the alternative, a surrender of the leased property. In fact, all parties were ignored in the proceedings by which the forfeiture is claimed, except the receiver, and he was dealt with as having such absolute ownership and entirety of control, as to justify parties claiming a forfeiture of leasehold property in his possession, in ignoring the court which appointed him, the trustees of the mortgages which were being foreclosed, and who represented the beneficial ownership of the property, and the mortgagor which had taken the leases, given the mortgages, and had an equity of redemption in the mortgaged property.

It further appears that the title to these properties had changed since the execution of the leases. These changes resulted from death and succession of interest as well as from conveyances; so that there was at the time the receiver took possession some doubt as to who were entitled to the rentals,

or, at least, a portion of them. In view of this fact, the receiver had been advised by his counsel not to pay them until an order had been made by the court for their payment, which would be protection to him in so doing. In consequence of this advice no payment was made. It does not appear that any effort was made to satisfy the receiver as to the title to this leased property, or as to the parties to whom the rent was due; nor that there was any purchase of goods from the company's store, as theretofore, with the view of having the amounts thereof applied on the rent. It does appear that there was some talk among the lessors of the existence of a rival corporation ready to rent these lands. Under these circumstances, the claimants, as heretofore stated, on July 17, 1885, filed their petition. The receiver answered, and on September 15, 1885, an order was entered forfeiting the leases. An application for rehearing was made at the same term and on the 25th of September, which was immediately sustained. Thereafter and on the 23d of February, 1886, William E. Burr, the trustee in the mortgage of the Carbondale Coal and Coke Company, filed an answer to the intervening petition; and an amount of money necessary to cover all these rentals was deposited in the office of the clerk of the Circuit Court, to be paid to such parties as should show themselves entitled thereto. Testimony was taken, and on the 6th of November, 1886, upon the petition, answers of the receiver and trustee and the testimony, a decree was entered dismissing the petition, adjudging the leases to be in full force, and directing all persons claiming an interest in the rental fund to present their claims. From this the intervenors have appealed, and their appeal is the first of the two cases before us for consideration. The other arises in this way: Between the 15th of September, 1885, on which day the order was entered forfeiting the leases, and the 25th of September, 1885, on which day the rehearing was granted, Hitchcock, this appellant, leased from the intervenors the lands whose leases had thus been forfeited. After the rehearing had been granted, the court ordered that he be made a party to the proceedings, in response to which order he appeared and filed an answer, setting up his claims.

At the same time and as a part of the decree against the lessors, one was entered against him, decreeing that the leases made by the intervenors to him be set aside, and that he be restrained from interfering with the rights of the Carbondale Coal and Coke Company and the receiver to carry on mining operations in these premises. From such decree he has taken this appeal. ,

*Mr. James McCartney* for appellant Ethan A. Hitchcock.

*Mr. W. W. Barr* for appellants Henderson and others submitted on his brief.

*Mr. H. J. May* for appellees. *Mr. A. H. Garland, Mr. Charles S. Taussig* and *Mr. James Taussig* were on the brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

A preliminary question in the first case requires notice : Is the amount in controversy sufficient to give this court jurisdiction of this appeal ? What is the subject matter of the controversy ? Evidently the leasehold interests held by the Coal and Coke Company. What is the value of those interests ? The pleadings in the intervention proceedings do not disclose it. In the order allowing these appellants to appeal it is stated that, " It appearing to the court that there is a greater amount than the sum of five thousand dollars involved in the property in suit by the intervening petitioners herein," (naming them,) " it is therefore hereby ordered, adjudged and decreed by the court that said intervening petitioners be allowed an appeal," etc. That is, the total value of all the leasehold interests is found to be in excess of five thousand dollars; but there is no joint interest on the part of these several intervenors. They do not appear as jointly interested in a single piece of the property in dispute. There are four leases, each independent of the other, and each including separate property. The lessors in one lease are in no manner

interested in the property covered by the other leases. While the stipulations in the various leases respecting forfeiture are alike, the proceedings for forfeiture are different; and, even if similar proceedings were taken in each case, that would not make a unity of interest in the various lessors. The forfeiture of each lease is an independent cause of action, in respect to which the lessors in the other leases have no interest. One may have taken proper proceedings to establish a forfeiture, and the other not. The failure of the one would not defeat the right of the other. Any lessor may drop out of the litigation without disturbing the right of the others to proceed. The fact that they have united in one intervening petition does not give them a unity of interest. It is precisely the same as though four persons, having independent and separate claims of fifteen hundred dollars each against the company, had united their several claims in one petition. Even though no objection on account of misjoinder was or could have been made, it would not change the fact that each one's interest was separate from that of the others, and amounted to only fifteen hundred dollars. There is nothing in the pleadings or in the findings which shows the separate value of each leasehold interest; and where there are separate interests the jurisdiction of this court does not depend upon the aggregate value of such interests, but, as to each party, upon the value of his interest. This matter has several times been considered in this court, and the decisions are uniform. In the case of *Gibson* v. *Shufeldt*, 122 U. S. 27, the question was considered at length, and the authorities in this court fully reviewed. In it the rule was stated as follows: "But in equity, as in admiralty, when several persons join in one suit to assert several and distinct interests, and those interests alone are in dispute, the amount of the interest of each is the limit of the appellate jurisdiction." There are no affidavits of value filed with this record. Indeed, it is probable they would not be admissible. *Red River Cattle Company* v. *Needham*, 137 U. S. 632. If we turn to the testimony, we find nothing which satisfactorily establishes the value of any one of these leasehold interests. While one of the witnesses, assuming an uniform thickness of

the vein of coal beneath each tract, made large estimates of value, yet other testimony plainly disclosed that which all experience affirms, an uncertainty as to such thickness, and also made manifest the expense and difficulties attending the mining of whatever coal there may in fact be beneath the property. And more than that, the considerations of the conveyances offered in evidence clearly tend to establish that the total value of no single leased tract, including therein both the fee of the land and the leasehold interest, is equal to five thousand dollars. Under these circumstances, this court has no jurisdiction of this appeal, and it must be dismissed.

In the second case the appeal, as above stated, is by a party who claims a subsequently acquired leasehold interest in all the tracts, the aggregate value of which is found to be in excess of five thousand dollars. So we proceed further to consider the question as to the right of forfeiture, for if the leases were never forfeited Hitchcock could not by a subsequent lease acquire any rights to the coal, to the prejudice of the Coal and Coke Company.

Upon this matter we observe that it is evident, from the statement of facts heretofore made, that the claims of the intervenors rest upon no equitable considerations, but only on the letter of the law. They do not seek to continue their contract and recover the rent, but to enforce a forfeiture; and forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto. One condition essential to the forfeiture of a lease by the lessor was at common law, and is, under the statutes of Illinois, a demand. In *Prout v. Roby,* 15 Wall. 471, 476, this court said, quoting from *Connor v. Bradley,* 1 How. 217: "It is a settled rule at the common law, that where a right of reëntry is claimed on the ground of forfeiture for the non-payment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset on the day when the rent is due, upon the land, in the most notorious place of it, though there be no person on the land to pay." It is not pretended that any such demand was made in this case. The statutes of Illinois have this pro-

vision: "Any demand may be made or notice served by delivering a written or printed, or partly written and printed, copy thereof to the tenant, or by leaving the same with some person above the age of twelve years, residing on or in possession of the premises; and in case no one is in the actual possession of said premises, then by posting the same on the premises." Starr & Curtis's Annotated Statutes, 1885, p. 1495, sec. 10.

Under this section two methods of serving demand and notice are provided: One personally upon the tenant; the other, on the leased premises. There was no attempt at the latter. Indeed, as the lessors were in actual possession of the surface of the ground, and the lessee had as yet made no entrance into the coal veins, it might have been difficult to have complied with the statute, by giving such a notice on the premises as would have, forfeited the leases. Neither was any notice given at the offices or works of the Coal and Coke Company in Illinois. What the lessors attempted, was to give personal notice to the receiver, and to him alone, by mail, in St. Louis. There is no testimony showing that Harrison, the receiver, lived in St. Louis. It is true, in the cross-bill of the trustee in the mortgage of the Coal and Coke Company, filed a year after the appointment of the receiver, and months after the filing of the intervening petition, Harrison is described as residing in St. Louis; but if this description in the cross-bill of the trustee can be invoked by the intervenors as an admission in their behalf, it would seem to imply that the party whose admission was thus relied upon was himself the one entitled to notice; and, in this respect, it must be borne in mind that the receiver was appointed, not at the instance of this trustee, or in a suit filed by him, but at the instance of and in a suit filed by certain stockholders and creditors of the Coal and Coke Company.

But passing this, as to two of the leases, notices were sent on February 2, 1885, in a registered letter, and the registry return receipt was in evidence. The endorsement on the receipt is "John W. Harrison, per C. M. Pierce." These letters were not directed to Harrison as receiver of the Coal and

Coke Company, and there is no testimony as to who C. M. Pierce was, or what relations, if any, he sustained to the Coal and Coke Company, or the receivership or John W. Harrison. There was no other evidence tending to show that Harrison ever received the notices. It may be that C. M. Pierce was a secretary or employé of John W. Harrison's, authorized to receive and receipt for his letters, but there is no evidence as to the fact. No reason is given why personal service was not made on Harrison. Doubtless, as receiver, he was often at the company's office and works in Illinois, in the immediate neighborhood of the leased premises, and the residences of the lessors. At any rate, St. Louis is not very distant, and if it were too much trouble for these lessors, themselves, to visit St. Louis, the notices could easily have been sent to some one there, by whom personal service could have been made. It is true that the receiver, in his answer to the intervening petition, does not deny the receipt of these notices. But for two reasons this does not help the intervenors: First, the allegation in the petition in respect to demand and notice, and the service thereof, is limited by a reference to the writing containing the demand and notice, a copy of which is attached as an exhibit, and a like reference to the registry return receipt, also attached as an exhibit; and doubtless the receiver could not deny these matters. The question is not whether these demands and notices were prepared and placed in an envelope and mailed as stated, nor whether the registry return receipt was as stated, but whether these facts establish personal service on the receiver. His failure to deny the facts does not justify the inference which intervenors draw from them. It only leaves the matter for the determination of the court. The other is, that in equity proceedings a party must prove all the facts necessary to his right, except so far as they are admitted by the adverse party. From these considerations it is evident that, as to these two cases, no such proof was made of the personal service of demand and notice as entitled petitioners to a decree of forfeiture.

Passing now to a third lease — the one executed by Nancy Priddy, as widow and guardian. It appears that the property

leased passed, by sundry conveyances subsequent to the lease, to William Henderson, one of the intervenors. We do not understand that there is any question as to his ownership of the property, or as to his having acquired all the title origi-nally held by the lessors. He, too, attempted to give notice by mail, instead of by personal service, and on the 1st of January, 1885, at Carterville, Illinois, he mailed a notice, of which the following is a copy, to John W. Harrison, receiver, etc., at St. Louis, Missouri:

"CARTERVILLE, ILL., *January* 1, 1885.

"To John W. Harrison, Receiver of the Carbondale Coal and Coke Company.

"SIR: There is now due me for rent or lease money on east one-half of the southeast quarter of section 33, township 8, range 1 east, eighty dollars for the year 1884. I hereby demand payment of the amount due me and for said rent as aforesaid, and if payment be not made within ten days from the date of this demand I shall claim a forfeiture in accordance with the terms of the lease heretofore given to A. C. Bryden, president of the Carbondale Coal and Coke Company, by me, for the minerals underlying said above-described real estate.

"Yours truly,            WILLIAM HENDERSON."

This notice was not mailed in a registered letter. There is no testimony as to whether the letter thus mailed was returned to the sender; and no evidence of the receipt of the letter, other than that which flows from the fact of mailing. Undoubtedly, under some circumstances, this is evidence of the receipt. In 2 Wharton on Evidence, sec. 1323, the rule is thus stated: "The mailing a letter, properly addressed and stamped, to a person known to be doing business in a place where there is established a regular delivery of letters, is proof of the reception of the letter by the person to whom it is addressed. Such proof, however, is open to rebuttal, and ultimately the question of delivery will be decided on all the circumstances of the case." In support of this proposition many authorities are cited, among them the case of *Lindenberger* v. *Beall*, 6 Wheat.

104. In the case of *United States* v. *Babcock*, 3 Dillon, 571, 573, in which the question was elaborately discussed by counsel, Judge Dillon stated the law in these words: "Upon the subject of the admissibility of letters, by one person addressed to another, by name, at his known post-office address, prepaid, and actually deposited in the post office, we concur, both of us, in the conclusion, adopting the language of Chief Justice Bigelow in *Comm.* v. *Jeffries*, 7 Allen, 548, 563, that this 'is evidence tending to show that they reached their destination, and were received by the persons to whom they were addressed.'" This is not a conclusive presumption, and it does not even create a legal presumption that such letters were actually received; it is evidence tending, if credited by the jury, to show the receipt of such letters; — "a fact," says Agnew, J., *Tanner* v. *Hughes*, 53 Penn. St. 290, "in connection with other circumstances, to be referred to the jury, under appropriate instructions, as its value will depend upon all the circumstances of the particular case." See also *Rosenthal* v. *Walker*, 111 U. S. 185. This presumption, which is not a presumption of law, but one of fact, is based on the proposition that the post office is a public agency charged with the duty of transmitting letters; and on the assumption that what ordinarily results from the transmission of a letter through the post office probably resulted in the given case. It is a probability resting on the custom of business and the presumption that the officers of the p~ 'al system discharged their duty. But no such presumption arises unless it appears that the person addressed resided in the city or town to which the letter was addressed; and in this respect the observations heretofore made as to the evidence that Harrison, the receiver, resided in St. Louis, are pertinent.

But, passing that, let us examine the notice itself. The real estate is described, and an amount of rent alleged to be due; but the claim of forfeiture is, as expressed, " in accordance with the terms of the lease heretofore given to A. C. Bryden, president of the Carbondale Coal and Coke Company by me." No such lease appears in evidence. The only lease in respect to this real estate shown is one from Nancy Priddy, widow of

Peters Priddy and guardian of the minor heirs of said Peters Priddy, to the Carbondale Coal and Coke Company. We may not assume what the provisions of the lease referred to were in respect to forfeiture; and there can be no doubt but that parties to a lease may, by express stipulation, provide for an extension of the statutory conditions of forfeiture. We do not mean to be understood as saying that parties may by contract deprive the lessee of the protection against summary forfeiture, given by the statute. There may be a public policy which will prohibit any such agreement for a summary deprivation of right, but there is no public policy which prevents contract stipulations in the other direction. Parties may make a lease, with a valid stipulation therein, that no forfeiture shall take place until after twelve months' demand and notice, and in other respects limiting the right of reëntry. And when a forfeiture is demanded in accordance with the terms of a lease, before such forfeiture can be decreed it is necessary that the lease be produced in evidence, in order that the court may see that there are in it no contract stipulations in respect to forfeiture beyond the statutory provisions. It is true that the intervenor Henderson testifies that he did not give any lease to A. C. Bryden, and that the lease he referred to in his demand was that given by Nancy Priddy, guardian, etc., to the Cole and Coke Company on April 5, 1873. But can it be that parol testimony is competent to thus change the whole tenor and scope of a written instrument? This is a proceeding in strict right. Intervenor demands a forfeiture, and as evidence of his right to a forfeiture alleges a written demand in accordance with the terms of a described lease. When his case comes on for hearing he says there is no such lease, and the one referred to was an entirely different lease, between different parties from those therein named. Surely it needs no argument to show that such a notice, with such evidence, does not lay the foundation for a decree of forfeiture.

With regard to the remaining lease, substantially the same observations are appropriate. This was the notice which was given, and it was served in the same way :

"CARTERVILLE, ILL., *Jan.* 1, 1885.

"To John W. Harrison, receiver of the Carbondale Coal & Coke Company.

"SIR: There is now due me for rent of lease on southwest quarter of southeast quarter of section 33, township 8 south, of range 1, forty dollars ($40) for the year 1844, less the amount received at the company's store, at Carterville, Ill., in goods, etc. I hereby demand payment of the amount due me for said rent as aforesaid, and if payment be not made within ten days from the date of this demand I shall claim a forfeiture in accordance with the terms of the lease heretofore given to you by me for minerals underlying said above-described real estate.

"Yours truly,          JOSEPH WALDRON."

The only lease of this real estate, which was in evidence, was one executed March 11, 1873, by Thomas Waldron and his wife, Barbara Waldron, to the Carbondale Coal and Coke Company, which lease recites that on the 25th day of March, 1871, a right had been given by Joseph Waldron and wife to Frank J. Chapman and two others, to enter upon the premises and mine the coal and other mineral therein, upon certain conditions which are not detailed, and which further recites, "that Thomas Waldron and wife are now the owners of the real estate, and that the mining rights given to Chapman and others have been assigned to the Carbondale Coal and Coke Company," and thereafter proceeds to describe the terms and conditions of the lease. Similar testimony was given as in the Henderson case, except that in this the intervenor did not testify that he had not made a lease directly to the receiver, nor that the lease which he referred to in his demand was the one executed by Thomas Waldron and wife to the Carbondale Coal and Coke Company. This, however, makes no material difference, for, as we have seen, the testimony of Henderson as to his intentions and what he meant by his demand is incompetent as against its plain letter. It is needless, therefore, to enter into any new discussion of the sufficiency of this demand and notice.

In conclusion, in respect to all these leases, it may be observed that there is not that full, clear and strict proof of the delivery to the receiver, even if he were the party alone entitled thereto, of a demand and notice, correct in its description, and sufficient to entitle the lessor to a forfeiture.

Appellant further insists that the court erred in granting a rehearing to the receiver. The rehearing was granted at the same term; and it is familiar law that a court of equity has full power over its orders and decrees during the term in which they are entered. In *Doss* v. *Tyack*, 14 How. 297, 313, this court said: "The court, in vacating the decree, were correcting an error both of fact and of law; and, during the term at which it was rendered, they had full power to amend, correct or vacate it, for either of these reasons." And in *Basset* v. *United States*, 9 Wall. 38, 41, in which the action of a court in setting aside a judgment at the same term at which it was rendered was sustained, it was said that "this control of the court over its own judgment, during the term, is of every-day practice." As from the foregoing opinion it is apparent that the court erred in its first decree, its action in granting a rehearing cannot be condemned; and where a judgment or decree is set aside at the term at which it is rendered, it is as though it had never been. It appears from the evidence that Hitchcock had full notice of the proceedings in the Circuit Court, so that he cannot claim to have been misled. Knowing that the court had full power during the term to vacate its own decree, he took these leases subject to the possibility of such vacating of the decree.

It is also objected that there was error in making Hitchcock a party to these proceedings; but, although the court ordered that he be made a party, no process was served on him; he voluntarily appeared and filed an answer, setting up 'his claims. It is too late now for him to object that there was error in this.

*From these various considerations it is ordered that the appeal in No. 247 be dismissed, and that the decree in No. 248 be affirmed.*