## WINSLOW v. STAAB et al.

### (Circuit Court of Appeals, Second Circuit. April 10, 1917.)

### No. 171.

1. JUDGMENT ⟨⟩⟩⟩341—SETTING ASIDE—AUTHORITY DURING THE TERM.
   As a general rule, all judgments or other orders of courts are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and during that period may be set aside, vacated, modified, or annulled by that court.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 667.]

2. JUDGMENT ⟨⟩⟩⟩342(1)—SETTING ASIDE—AUTHORITY AFTER TERM.
   It is the general rule that after the term has expired all final judgments and decrees pass beyond the control of the court, unless steps were taken during the term to set aside, modify or correct them.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 668.]

3. EQUITY ⟨⟩⟩⟩430(1)—VACATING DECREES—POWER OF COURT.
   As a general rule, the control of a court of equity over its decrees continues throughout the term at which they are entered; but after the expiration of the term no power ordinarily exists to make a substantial change, except by a bill of review.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1034–1040, 1047.]

4. EQUITY ⟨⟩⟩⟩430(1)—VACATING DECREES—POWER OF COURT.
   Where, in a suit to set aside two alleged fraudulent conveyances by a bankrupt, a decree was entered dismissing the bill as to the earlier conveyance on defendant's representation that the equity in the property covered by the subsequent conveyance, at the time of the first conveyance, was sufficient to pay the then existing creditors, of the bankrupt, and thereafter defendant's counsel moved to set aside a decree for plaintiff as to the second conveyance on the ground that title to the property was in the bankrupt and his wife as tenants by the entirety, the court had authority to set aside the decree dismissing the bill as to the first conveyance though the term at which it was entered had expired, as it was obtained by misrepresentation.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1034–1040, 1047.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Francis A Winslow, as trustee in bankruptcy of Frederick Staab against Amy T. Staab and others. From an order (233 Fed. 305) setting aside two decrees and ordering new trials, the defendant named appeals. Affirmed.

The facts are as follows: On May 15, 1913, Frederick H. Staab, a resident of the city of Mt. Vernon, in the state of New York, transferred to his daughter, Amy T. Staab, a piece of real estate situate on Cottage avenue in Mt. Vernon, which for convenience hereinafter is referred to as the "home property." In July of the same year Staab transferred to another daughter Effie

---
⟨⟩⟩⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

O. Staab, property situate on South Fourth avenue in Mt. Vernon, and which for convenience hereinafter is referred to as the "business property." In the year following, in June, 1914, Staab was duly adjudicated a bankrupt in the District Court of the United States for the Southern District of New York.

After the first meeting of creditors had been called and the trustee elected, a bill in equity was filed in the District Court for the Southern District of New York, for the purpose of setting aside and declaring fraudulent as against creditors the transfers of the properties to which reference has heretofore been made. The two actions were tried as one. The defendants offered no evidence, but rested upon the testimony and exhibits presented by the trustee. The bill, which sought to set aside the transfer of the home property to Amy T. Staab, was dismissed, for the sole reason that it was represented that there was sufficient equity in the business property existing at the time the home property was transferred to pay the then existing creditors of the bankrupt, and a decree dismissing the bill was entered on December 29, 1915. As respects the bill relating to the business property the District Judge reserved his opinion until March 29, 1916. In the opinion which he then filed he concluded that the conveyance was in fact fraudulently made, without adequate consideration, and should be set aside as prayed, and a decree to that effect was accordingly entered.

The solicitor for the appellant then moved for an order setting aside this decree for the reason, as he alleged, that he had then learned for the first time that the title to the business property was in the bankrupt and his wife, Thusnelda Staab, as tenants by the entirety, and not in the bankrupt as owner in fee. This fact it was claimed the solicitor and his clients had suddenly discovered a few days before the making of the motion, five months after the conclusion of the trial, which had ended on November, 1915. When this motion was heard, the counsel for the trustee pointed out that, inasmuch as both of these actions were tried as one, and inasmuch as the sole reason for dismissing the complaint in regard to the home property was based upon the fact that it was represented to the judge by the solicitor for the bankrupt and his daughters that there was sufficient equity in the business property to pay the then existing creditors, and that as it suddenly appeared now that this was not the fact, if the decree was to be set aside as to the business property, justice required that the decree should also be set aside which dismissed the bill as to the home property.

The District Judge acquiesced in the above view, and set aside the two decrees, and ordered new trials. From this Amy T. Staab has appealed.

Milo J. White, of Mt. Vernon, N. Y., for appellant.

Yankauer & Davidson, of New York City (I. Maurice Wormser, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question presented is whether a court of equity has the power to set aside a decree after the term has expired, where the decree was obtained by a misrepresentation made to the court at the time the decree was obtained. In this case the trial judge has set aside a decree after the expiration of the term and has ordered a new trial.

[1, 2] The general rule is undoubted. It is that all judgments, decrees, or other orders of courts are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and during that period they may be set aside, vacated, modified, or annulled by that court. But after the term has expired all final judgments and decrees pass beyond its control, unless steps were taken during the term to set aside, modify, or correct them. If errors exist, they must then be corrected by writ of error or appeal

in a court authorized by law to review the decision. Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013 (1886). There are certain exceptions to the general rule. These are pointed out in an opinion by Mr. Justice Hughes in United States v. Mayer, 235 U. S. 55, 35 Sup. Ct. 16, 59 L. Ed. 129 (1914). In that opinion the court confined its attention to the power of courts of common law to alter or set aside a final judgment after the term, stating that "we are not here concerned with the special grounds upon which courts of equity afford relief."

[3] But we are now concerned with the powers of a court of equity over decrees, and the general rule in such cases is that the control of the court over its decrees continues throughout the term at which they are entered. Henderson v. Carbondale Coal, etc., Co., 140 U. S. 25, 11 Sup. Ct. 691, 35 L. Ed. 332 (1891); Doss v. Tyack, 14 How. (55 U. S.) 297, 14 L. Ed. 428 (1852). But after the expiration of the term no power ordinarily exists in the court to make a substantial change, except by bill of review. Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467 (1818); State v. Bank of Commerce, 96 Tenn. 591, 36 S. W. 719. The technical rule of the English courts is that it is the enrollment of the decree which places it beyond the control of the court. Daniell's Chancery Practice, 682. This, however, is usually worked out by treating the decree as enrolled at the end of the term. See 16 Cyc. 474. After enrollment it has been held that a decree can be amended to insert matter inadvertently omitted. Jarman v Wiswall, 24 N. J. Eq. 68; Sprague v. Jones, 9 Paige (N. Y.) 395; Oliver Finnie Grocery Co. v. Bodenheimer, 77 Miss. 415, 27 South. 613. And so it has been held that the enrollment itself may be vacated for irregularity in obtaining it. Barry v. Barry, 1 Md. Ch. 20; Pickett v. Loggon, 5 Vesey, Jr., 702. It has been held that a decree may be amended after enrollment and may be vacated by consent. Allen v. Allen, 48 S. C. 566, 26 S. E. 786. And it has also been decided that it may be vacated for false representation in inducing the judge to sign it. U. S. ex rel. Fisher v. Williams, 67 Fed. 384, 14 C. C. A. 440 (1895). In U. S. ex rel. Fisher v. Williams the Circuit Court of Appeals in the Eighth Circuit held that a federal Circuit Court had power to set aside after as well as before the end of the term a final decree which the judge had been induced to enter by false representations as to its character and which he did not intend to enter. The court in that case said:

"It may be conceded that if the decree had been expressed in terms which were known to the judge when he entered it, and he had merely misconceived the import or legal effect of the language employed, then the mistake would have been one of law—an error of judgment—such as no court can correct, on a mere motion, after the lapse of the term, by modifying the erroneous judgment, or by setting the same aside. But such was not the case. The respondent did not read the proposed decree. He relied on the statement of counsel who had prepared it that it was an interlocutory order, and on that representation it was allowed to be spread upon the records of the court. The judge acted under a mistake of fact; his judgment was not invoked, and was not exercised, with respect to àny of the terms or provisions of the alleged decree, and for that reason it was not, in any proper sense, a judicial act. We think, therefore, that on the state of facts disclosed by the return the respondent did not exceed his powers in vacating the final decree at the October term, 1893, when his attention was called to the character of that

decree. We are of the opinion that when, by a mistake of the judge, induced by erroneous statements of counsel, a decree has been entered of record, which the judge did not examine or approve, and did intend to enter, such decree may be set aside, on motion, after as well as before the expiration of the term. We can conceive of no reason why the parties to a suit, or the court, for that matter, should be bound to any greater extent by a decree of that kind than by a judgment or decree erroneously entered in consequence of a mistake of the clerk as to the character of a judgment directed to be entered. In both cases the record is affected with the same vice, in that it is made to bear witness to judicial action that was never in fact taken. It is well settled that the record of a court may be corrected at any time, from memoranda made by the judge, or even by the personal recollection of the judge, when, through a misprision of the clerk, it fails to speak the truth, or to speak the whole truth. Bank v. Perry (decided by this court at the present term) 66 Fed. 887 [14 C. C. A. 273]. And we are not aware of any substantial reason why the same rule should not be applied to the correction of errors in a record that were occasioned by a mistake of the court or judge, when they are of the character described in the case at bar. We are unwilling to concede that a litigant must resort to an original bill, or to a bill of review, for the purpose of avoiding a decree which a court was induced to spread of record on the last day of the term, without reading it, by reason of an erroneous statement made by counsel as to the character of the decree."

In the instant case the judge knew the contents of the decree he signed and the legal effect of the language employed. But he was induced to sign it by a misrepresentation of fact made to him by counsel, and if the fact had not been so represented he would never have entered the decree. We cannot see why he should be bound by such a decree to any greater extent than he would have been bound if the contents of the decree had been misrepresented to him.

The case of White v. Tommey, 4 H. L. C. 313, decided in the House of Lords in 1853 throws light upon the question now under consideration. The facts were as follows: A decree in chancery was enrolled in 1835, and a petition for leave to appeal against it was presented in 1839 and refused; the time for appealing having expired. A bill of review was filed in 1844, and a demurrer to that bill was allowed. The order allowing the demurrer was appealed against in 1846 and the appeal dismissed. In 1847 there was a general dismissal of the appeal. In 1848 there was a petition to appeal against the original decree and in the petition it was stated "that it appeared by the order of July, 1847, that the decree of January, 1835, had not been complained of, and therefore that their lordships had not made any declaration with respect to it," and that the said decree had never been adjudicated upon by their lordships. Accordingly leave was given to include in the appeal the decree of 1835. The appeal was heard ex parte, and in June, 1850, the decree was reversed. The House of Lords held that, as this reversal had been obtained by suppression and misrepresentation, the order should be discharged which gave leave to appeal against the decree of 1835 and the order which had reversed that decree. The Lord Chancellor, after stating the facts, said:

"Now comes the important question—what ought your lordships to do in this state of things? It was pressed very strongly on the part of Tommey by his counsel, that your lordships in truth have no jurisdiction, that after a matter has once been heard and adjudicated upon in this ultimate court of appeal, there is an end of it, that there must be an end somewhere, and that if it can be said that the trustees can be heard now to come, and call in question

the decree of 1850, what is to prevent Mr. Tommey coming afterwards, in 1860, and praying your lordships to reconsider it again, and so toties quoties to the very end of time? That is undoubtedly an argument entitled to the greatest weight. * * * Several authorities were referred to, in which it had been stated by Lord Eldon and other learned judges that a case once decided here between A. and B. is, as against A. and B., conclusively and forever decided, and that nothing but an act of Parliament can afterwards alter the decision. I think that is so; but then it appears to me that the matter was finally settled against Mr. Tommey either in 1839 or in 1847, and that brings me to observe upon the qualification which is introduced by Lord Eldon on this subject, which has a material bearing upon the present case. Although in any question decided by this House upon appeal the matter is finally settled between the litigant parties, it is always subject to this condition: That if one party has, by any misrepresentation—I will not put it so high as to say by fraud, for I do not wish to use harsh terms—but, if by misrepresentation, inadvertently (if you will) introduced, a party has led the House into an error, has led it to suppose that something is going on irregularly, all the commonest principles of justice compel this House, as they must compel any other tribunal, to interfere to prevent its own decisions from being made the machinery for effecting a fraud or the machinery for effecting that which, if not done per incuriam, would have been a fraud. * * * What is the relief, then, which your Lordships in your wisdom ought to think fit to grant to the parties? Evidently to put them in precisely the same position as that in which they were before that erroneous order was made (behind their backs), giving leave to Tommey to present the appeal which has led to all the difficulty. * * * I shall move your Lordships to discharge those orders, and to direct that the Court of Chancery in Ireland should deal with the case remitted back to it by the order of 1850 in such a way as may be just, having regard to the fact that the several orders aforesaid have been discharged."

The effect of fraud inducing the signing of one paper believing it to be another is to make the paper signed absolutely void. Where, however, a paper is signed with full knowledge of its contents, and the fraud relates to a misrepresentation of extrinsic facts which induced the signing, the instrument signed is not void, but voidable. In Fisher v. Simon the fraud related to the contents of the decree, and that made it not voidable, but void. While in the case in the House of Lords the misrepresentation was not as to the contents of the orders, but as to the extrinsic facts which led to the making of the orders which had been entered, and which the House set aside. The power to vacate and set aside was held to exist in both cases. As the Lord Chancellor declared:

"All the commonest principles of justice compel this House, as they must compel any other tribunal, to interfere to prevent its own decisions from being made the machinery for effecting a fraud, or the machinery for effecting that which, if not done per incuriam, would have been a fraud."

Courts of equity have interfered even to restrain proceedings at law whenever through fraud, accident, or mistake one of the parties in a suit at law has obtained, or is likely to obtain, an unfair advantage over the other, so as to make the legal proceedings an instrument of injustice. That jurisdiction it has exercised at any stage of the proceedings. It has in the exercise of that jurisdiction issued injunctions to stay trial, and after verdict to stay judgment, and after judgment to stay execution, and after execution to stay the money in the hands of the sheriff, if it was a case of fieri facias, or to stay the delivery of posses-

sion. See Bispham's Equity (8th Ed.) § 407, and cases there cited. And in Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870 (1891), the Supreme Court states the law as follows:

"While, as a general rule, a defense cannot be set up in equity which has been fully and fairly tried at law, and although, in view of the large powers now exercised by courts of law over their judgments, a court of the United States, sitting in equity, will not assume to control such judgments for the purpose simply of giving a new trial, it is the settled doctrine that 'any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.'"

[4] A court which can protect against a judgment obtained at law by fraud, accident, or mistake is not powerless to relieve from a decree so obtained. The only question is whether the trustee is to file a bill to set the decree aside, or whether the court has the power to set it aside without the filing of a bill. We think the court has inherent power under the circumstances disclosed by this record to take the action that was taken in this case. The counsel who innocently made the misrepresentation was before the court asking to have the decree set aside in one of the actions (the two actions had been tried together being corelated) and basing his application on the former misrepresentation which he had made and which induced the decree in the other action. The District Judge thereupon set aside the decree in both actions and ordered new trials. In doing so he did not exceed his right.

We are asked not only to affirm the order, but also to direct that a decree be entered in favor of the trustee, setting aside the transfer by the bankrupt to his daughter Amy. We think the proper relief is simply to affirm the decree the District Judge has entered.

Decree affirmed.