In the Matter of Anthony M. BENTLEY, Debtor.

Anthony M. BENTLEY, Plaintiff,

v.

Joseph R. MARRO, City Marshal Norman Katz, Leonard Simon, P. C., 75 East End Owners, Inc., Defendants.

Bankruptcy No. 81–B–10607.

United States Bankruptcy Court, S. D. New York.

July 14, 1981.

Sherman & Citron, New York City, for debtor.

Leonard Simon, New York City, pro se and for Joseph R. Marro.

## OPINION

ROY BABITT, Bankruptcy Judge:

On March 20, 1981, Anthony M. Bentley (debtor) filed a petition under Section 301 of the Bankruptcy Reform act of 1978 (Code) for the relief afforded by Chapter 11. 11 U.S.C. §§ 1101 *et seq.*[1] On April 2, 1981, this debtor began this adversary proceeding, Bankruptcy Rule 701(1), 411 U.S. 1068,[2] by filing a complaint, Rule 703, seeking to recover property of the estate currently in the possession of Joseph A. Marro, a receiver appointed in a New York State court mortgage foreclosure action, about which more will be said later. 11 U.S.C. § 543.

The property at issue is the debtor's residence, a cooperative apartment, currently in the receiver's possession pursuant to a warrant of eviction issued in a summary proceeding commenced in New York City Landlord Tenant Court by Astoria Federal Savings and Loan Association (Astoria). It is the debtor's view that this possession is wrongful as the state court was bereft of jurisdiction over this summary dispossess proceeding, making the judgment and warrant of eviction a nullity. Therefore, debtor commenced this suit to recover his leasehold interest as property of the estate, a broad category most generally defined as embodying all legal or equitable interests of the debtor as of the commencement of the case, wherever located. 11 U.S.C. § 541(a)(3).

---

1. The 1978 statute, Pub. L. 95–598, 92 Stat. 2549, *et seq.*, U.S. Code Cong. & Admin.News 1978, p. 5787, was enacted on November 6, 1978 and took effect on October 1, 1979. Section 402(a) of Title IV. It is the only operative bankruptcy statute for petitions filed on and after its effective date. The 1978 Code may be found in Supplement III to the 1976 edition of the United States Code, Title 11.

2. As new rules have not yet been prescribed for use with the 1978 statute, the existing rules of procedure are applicable, unless inconsistent. Section 405(d) of the 1978 statute's Title IV. The Part VII Adversary Proceeding Rules are not inconsistent with the Code, and therefore govern the procedure for suits such as this which is within Rule 701, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d lxvi.

Defendants [3] answered, relying on the validity of their actions, and counterclaimed for affirmative relief in the nature of vacatur of the automatic stay of 11 U.S.C. § 362(a), so they might continue their previously commenced state court action to foreclose upon a security interest in 245 shares of the capital stock of 75 East End Owners Inc., allocated to debtor's cooperative apartment, granted to Astoria pursuant to an April 17, 1975 pledge agreement.

Leonard M. Simon, a named defendant in the suit here, and attorney for the receiver, made an application for $6,304.20 in attorney's fees.

▮ Reduced to the essentials, the issue here is the right of a pledgee holding shares in a cooperative and the appurtenant lease as security to take possession of said apartment by summary proceeding under Article 7 of *New York's Real Property Actions and Proceedings Law.* (McKinney).

The facts, as best gleaned from this not always clear record, are these: to facilitate the purchase of 245 shares relating to a cooperative apartment, the debtor executed a $29,400 note and pledge agreement dated April 17, 1975, pursuant to which he pledged those shares and the appurtenant proprietary lease to the assignor of Astoria as security. The current value of the apartment, as represented by these shares, is estimated at $200,000. Transcript, April 3, 1981 at 31. Thereafter, Bentley failed to pay both the carrying charges on the note and the maintenance on his apartment, both instances of default under the terms of the pledge agreement. The total of the debtor's default on the secured indebtedness was about $3,000. when he filed his Chapter 11 petition!

To protect its interest, Astoria demanded immediate possession of the apartment pursuant to the terms of the pledge.[4] The debtor, not surprisingly, refused. It should be noted at this juncture that the landlord, taking the guise of the board of directors of the cooperative in this scenario, has taken no steps to remove the debtor from possession despite the fact that the debtor had failed to pay some maintenance costs.[5]

Astoria then commenced its foreclosure action in the Supreme Court of the State of New York to realize upon its security, the shares of stock in its possession. That action was stayed by the filing of the Chapter 11 petition. 11 U.S.C. § 362(a). However, before that stay became operative, the state court referee had determined the total indebtedness on the debtor's note to be $26,-746.82 as of November 19, 1980.[6] Judgment had not yet been entered when the petition was filed.

3. Although the original summons and complaint named four defendants, 75 East End Owners, Inc., the "lessor" of the cooperative apartment in question, was subsequently dropped as a defendant, as this entity was in no way involved in the summary dispossess proceeding. Transcript of hearing in this court on April 3, 1981, at 9.

Although not named as a party defendant herein, the pledgee, Astoria, is the real party in interest. Cognizant of this, Simon, who had represented Astoria in the state court proceedings, has continued this representation herein. Therefore, as Astoria has in actuality appeared in this proceeding, this court has refused to "exalt form over substance" and has dealt with it as a true party defendant. *Feick v. Fleener,* 653 F.2d 69 (2d Cir. 1980).

4. Paragraph 6(e) provides:
   "In the event of a default . . . purchaser shall immediately upon demand vacate and surrender possession of the apartment to the secured party who shall have the right to institute summary or other proceedings to obtain such possession if purchaser shall fail or refuse to so surrender possession".

5. The debtor has informed the court that he has been keeping his maintenance payments current. See Transcript of hearings before this court on April 3, 1981 at 47; April 7, 1981 at 4; April 29, 1981 at 8.
   Indeed, late in June, the debtor assumed the lease between him and the landlord upon satisfying the latter that any defaults in payment of maintenance charges would be cured. 11 U.S.C. § 365(b)(1)(A). This was achieved on consent of the landlord.

6. The court need not and therefore does not express an opinion as to the vitality of the acceleration of a $26,000. debt on a Chapter 11 debtor's $3,000. default where the property is concededly valued at about $200,000.

In connection with that litigation, Joseph R. Marro was appointed "Receiver of cooperative 4M at 75 East End Avenue, New York" by *ex parte* order of a New York State Supreme Court judge. This order provided that:

"... the receiver shall have the right to immediately take possession of said apartment 4M and that defendant Anthony Bentley shall immediately surrender possession of said apartment to such receiver and the receiver is authorized to institute proceedings or suit to evict said Anthony Bentley from apartment 4M in the event that said defendant does not voluntarily vacate such apartment within 72 hours after service of a copy of this order upon him ..."

As Bentley steadfastly refused to vacate, Marro commenced a summary proceeding in the Civil Court of the City of New York to recover possession. See Article 7, *Real Prop. Acts* (McKinney). Marro predicated his authority upon the terms of the pledge and the *ex parte* order for his appointment. This dispossess proceeding resulted in a judgment of eviction. Secure in all this, and armed with a warrant of eviction, defendants stand by what is believed to be Astoria's exclusive right of possession as debtor's interest in the leasehold was extinguished before the commencement of the Chapter 11 proceeding. This court must examine the law of New York to test this position.

Although defendants firmly believe that New York law settles the right of a secured party to take possession of leased premises upon default, even prior to judgment, a more even evaluation would best characterize the area as vague and in a state of flux:

"Cooperative Leases. As previously reported, the Commission has been alerted by the real property bar of New York to certain problems attending cooperative apartment interests. Aside from the Banking Law provisions which allow those purchasing cooperative interests the same opportunity to acquire and borrow against an equity interest as is employed by the purchaser of a house, *this area is governed by case law, often disparate and confusing*. It is claimed that there is a lack of definition as to various kinds of interests; ... *no sure guidelines* as to the appropriate remedy when a contract for sale of a cooperative apartment is broken; a confusing set of rules and procedures for the financing of a purchase; *inherent conflicts in the summary dispossess process*; ...". Report of Law Revision Commission for 1981, Legal Doc. No. 65, § 1980. (emphasis added)

The disposition of this case, however, is governed by principles standing on surer footing. Within the context of this adversary proceeding, the issue is the validity of the judgment of eviction obtained in the receiver's summary proceeding, for if that proceeding is a nullity, the property belongs to the estate and defendants are stayed from any further action. A reading of the relevant statute plainly indicates that the method chosen to attain possession was jurisdictionally defective and the proceeding is therefore a nullity.

At the outset, it is necessary to note that a summary proceeding is a creature of statute, and the provisions of the governing enactment must be strictly construed. With respect to jurisdictional matters the proceeding must be conducted strictly in accordance with statute. 14 *Carmody Wait* 2d Section 90.8 at 20. Article 7 of the *Real Property Actions and Proceedings Law* contains three sections which specify the grounds for their maintenance, and against whom they may be brought. Section 711 specifies the grounds where a landlord-tenant relationship exists. Section 713 specifies the grounds where no relationship exists, and Section 715 deals with cases of illegal use or occupancy. Section 721 dictates who may bring these proceedings, once the required grounds are alleged.

And though this remedy is available in certain circumscribed cases where the conventional landlord-tenant relationship does not exist, these sections are inapposite. See generally, Rasch 2 *New York Landlord & Tenant, Summary Proceedings*, Sections 1176, 1180. More generally, the summary

proceeding is barred to anyone not a landlord or lessor in the ordinary meaning of the term. Here, Astoria bases its authority solely on its right to possess the apartment pursuant to the terms of a written agreement. This mere right to possession is insufficient, as it is well settled that it is jurisdictionally essential to show that the conventional relation of landlord and tenant exists between the petitioner and the person sought to be removed. *Kashner v. Kapilow*, 283 A.D. 929, 130 N.Y.S.2d 427 (App. Div. 1st Dept. 1954), *aff'd* 308 N.Y. 887, 126 N.E.2d 565. The most that Astoria can demonstrate is a debtor-creditor relationship and that is insufficient to support a summary proceeding in state court. *Lawyers' Title and Guaranty Co. v. Tausig*, 149 Misc. 594, 268 N.Y.S. 815 (Munic. Ct. 1933).

■ Defendants also point to the terms of the pledge agreement as validating authority, *supra*, fn. 4, since Bentley had agreed to those terms. However, it is beyond cavil that even the parties' consent cannot confer such adjudicatory power. "The law and not the consent of the parties confers jurisdiction, and that rule could have no practical force, if consent, given in whatever form, could preclude inquiry as to the lawfulness of the jurisdiction". *Beach v. Nixon*, 9 N.Y. 35 (1853). In other words, the statute specifies the cases where an occupant of property may be removed therefrom by summary proceeding and, unless a statute gives jurisdiction in a particular situation, consent will not confer it. *Rasch, supra*, § 1001.

The point is that neither Astoria nor the receiver fit the description of a landlord or a landlord's receiver entitled to possession, *New York Real Prop. Acts Law*, §§ 721(9), (10). It is therefore clear that whatever occurred in the so-called landlord-tenant proceeding is a nullity, for whatever remedies Astoria's right to possession might entitle it or its representative to, it could not evict by summary proceeding. *Lawyers' Title and Guaranty Co. v. Tausig, supra; Mahshie v. Dooley*, 48 Misc.2d 1098, 266 N.Y.S.2d 661 (Sup. Ct. 1965).

■ Moreover, defendants' actions to realize a substantial windfall and to thereby deny the debtor home and hearth achieves a forfeiture, a result generally denounced by courts applying equitable principles in the exercise of its jurisdiction which this court does as it has been reminded again and again. See, *inter alia, Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

On the facts here of a Chapter 11 debtor whose unfortunate physical health contributed to his defaults, of a forbearing and understanding landlord, of a default representing but a fraction of the value of the apartment which is the debtor's residence, of a total secured debt representing a small fraction of the total value of the security, and of seriously questionable proceedings in state court, it would be the reverse of equity to permit the forfeiture which Astoria seeks. While it may be true that not every forfeiture is "harsh and oppressive" in the words of Circuit Judge Van Devanter (as he then was) in *Brewster v. Lanyon Zinc Co.*, 140 F. 801, 819 (8th Cir. 1905),[7] that which Astoria seeks to achieve here is in the last degree oppressive and must be leaned against, *Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 33, 11 S.Ct. 691, 694, 35 L.Ed. 332 (1891).

It follows, therefore, that the debtor is entitled to possession of his apartment, for Astoria's claim to such superseding possession rests on improper foundations. The scheme of Chapter 11 affords ample protection to Astoria in the matter of the earlier defaults, 11 U.S.C. § 1124(2), and in the matter of the total secured indebtedness, 11 U.S.C. § 1129.

It also follows that the counterclaim to obtain relief from the stay of 11 U.S.C. § 362(a) so that it might procure a final judgment of foreclosure must fall. The record here leaves no room to undercut this court's finding that the debtor has a substantial equity in the apartment and that an individual debtor's residence is necessary

---

7. Now the 10th Circuit.

to achieve his reorganization where his Chapter 11 case will deal primarily with a creditor secured by that residence. 11 U.S.C. § 362(d)(2).

It finally follows, also, that the application for compensation by counsel must be refused. The court perceives no reason to have this debtor pay for the actions of Astoria which were ill-conceived and contrary to law. To the extent some counsel fees are proper as Astoria's damages, that determination should abide the further unfolding of the Chapter 11 process, for 11 U.S.C. § 1124(2)(c) plainly contemplates some compensation in connection with a debtor's plan, classes of creditors impaired or unimpaired under that plan, and confirmation.

Settle an order on five days' notice.